IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - -  X
            :

AGNES CARVEL ESTATE, London England by   :
PAMELA CARVEL, Delaware Ancillary         :
Administrator PAMELA CARVEL, Fiduciary-   :   Case No. 07-cv-00238-JJF
Creditor, on behalf of herself and others similarly   :
situated,                           :
            :
        Plaintiff,               :
            :
        -against-              :
            :

LEONARD ROSS and              :
JOHN/JANE DOE 1-20            :
DOE CO. 1-20          .      :
            :

        Defendants.          :
            :

- - - - - - - - - - - - - - - - - - - - - - - - - -  X

## DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT
## FOR LACK OF PERSONAL JURISDICTION

Defendant Leonard M. Ross hereby moves, pursuant to Rule 12(b)(2) of the

Federal Rules of Civil Procedure, to dismiss Plaintiffs' Amended Complaint filed on

August 27, 2007, for lack of jurisdiction.

The Court is respectfully referred to the accompanying brief for the reasons

advanced in support of this motion.

BOUCHARD MARGULES & FRIEDLANDER, P.A.

/s/ David J. Margules
David J. Margules (#2254)
Sean M. Brennecke (#4686)
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
(302) 573-3500
dmargules@bmf-law.com
sbrennecke@bmf-law.com
Attorneys for Defendant Leonard Ross

OF COUNSEL:

Eve Rachel Markewich, Esquire
Markewich & Rosenstock LLP
8 East 41st Street, 5th Floor
New York, NY 10017
(212) 542-3156

DATED: November 26, 2007

## CERTIFICATE OF SERVICE

I, Sean M. Brennecke, hereby certify that on November 26, 2007, I caused to be

electronically filed a true and correct copy of the **Motion to Dismiss the Amended**

**Complaint for Lack of Personal Jurisdiction** with the Clerk of Court by CM/ECF.

I further certify that I served a true and correct copy of the foregoing document on

the plaintiff in the manner indicated below:

### By Federal Express

Ms. Pamela Carvel
23 Old Brompton Road
Suite 159
London SW7 3SS
England

/s/ Sean M. Brennecke
David J. Margules (#2254)
Sean M. Brennecke (#4686)
BOUCHARD MARGULES & FRIEDLANDER, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
(302) 573-3500
dmargules@bmf-law.com
sbrennecke@bmf-law.com
Attorneys for Defendant Leonard Ross

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - -      X

|  |  |
|---|---|
| AGNES CARVEL ESTATE, London England by PAMELA CARVEL, Delaware Ancillary Administrator PAMELA CARVEL, Fiduciary-Creditor, on behalf of herself and others similarly situated, | : <br> : <br> :   Case No. 07-cv-00238-JJF <br> : <br> : |
| Plaintiff, | : <br> : |
| -against- | : <br> : |
| LEONARD ROSS and JOHN/JANE DOE 1-20 DOE CO. 1-20 | : <br> : <br> : <br> : |
| Defendants. | : <br> : |

- - - - - - - - - - - - - - - - - - - - - - - - - - -      X

## [PROPOSED] ORDER

This _____ day of _____, 2007, having reviewed Defendant's

Motion to Dismiss Plaintiffs' Amended Complaint for Lack of Personal Jurisdiction, and

the papers submitted in connection therewith;

IT IS ORDERED that said motion is GRANTED, and the above-captioned action

is hereby dismissed.

_____

United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - X

AGNES CARVEL ESTATE, London England
by PAMELA CARVEL, Delaware Ancillary
Administrator PAMELA CARVEL, Fiduciary-
Creditor, on behalf of herself and others
similarly situated,

                Plaintiff,

              -against-

LEONARD ROSS and
JOHN/JANE DOE 1-20
DOE CO. 1-20

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

: Case No. 07-cv-00238-JJF

: **AFFIDAVIT IN SUPPORT**
: **OF MOTION TO DISMISS**
: **THE COMPLAINT**

LEONARD M. ROSS, being duly sworn, deposes and says:

1.     I am a named defendant in the within action, and submit this affidavit in support of my motion to dismiss the amended complaint for lack of personal jurisdiction.

2.     The amended complaint fails to allege facts sufficient for this Court to exercise personal jurisdiction over me.

3.     I am a citizen of the State of New York, where I am a lawyer admitted to practice law. I have never practiced law in Delaware, nor purported to do so. I have never represented plaintiff in Delaware. Plaintiff does not allege otherwise.

4.     The amended complaint is bare as to allegations that would confer jurisdiction on this Court. There are no allegations of any specific

Carvel-aff in support of motion to dismiss complaint.doc

acts I allegedly took in Delaware, nor any specific acts I took elsewhere which, because of some connection I have with the State of Delaware, would confer jurisdiction over me.

5.    Moreover, it is my understanding that the Delaware long-arm statute will only confer jurisdiction over me if I do business in the State, or if the allegations in the complaint involve specific action within the State.

6.    I do not regularly engage in or solicit business in Delaware, derive substantial revenue from services or things used or consumed in Delaware nor do I engage in any sort of persistent course of conduct in Delaware.

7.    I have appointed no agent for service of process in Delaware; I have no local listing, no bank account, real estate or employee within the state of Delaware.    I have not paid any taxes in Delaware, have not commenced any legal action or proceeding in Delaware and, except for this proceeding, have never been named as a defendant in a Delaware proceeding.

8.    Since the allegations of wrongdoing leveled against me by plaintiff are acts of omission, not commission, it is, furthermore, impossible that such alleged tortious behavior caused me to submit to the jurisdiction of this Court.

9.    I respectfully request that this Court grant my motion to dismiss

the amended complaint for lack of jurisdiction, and in so doing assess costs

against plaintiff.

LEONARD M. ROSS

Sworn to before me this $\Sigma$ <sup>st</sup>
day of November, 2007.

NOTARY PUBLIC

Brenda Dalessandro
Notary Public, State of New York
No. 01DA6160377
Qualified in Nassau County
Commission Expires Feb.6,2011

-3-

## CERTIFICATE OF SERVICE

I, Sean M. Brennecke, hereby certify that on November 26, 2007, I caused to be

electronically filed a true and correct copy of the **Affidavit in Support of Motion to**

**Dismiss the Complaint** with the Clerk of Court by CM/ECF.

I further certify that I served a true and correct copy of the foregoing document on

the plaintiff in the manner indicated below:

### By Federal Express

Ms. Pamela Carvel
23 Old Brompton Road
Suite 159
London SW7 3SS
England

/s/ Sean M. Brennecke
David J. Margules (#2254)
Sean M. Brennecke (#4686)
BOUCHARD MARGULES & FRIEDLANDER, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
(302) 573-3500
dmargules@bmf-law.com
sbrennecke@bmf-law.com
Attorneys for Defendant Leonard Ross

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - X

AGNES CARVEL ESTATE, London England
by PAMELA CARVEL, Delaware Ancillary
Administrator PAMELA CARVEL, Fiduciary-       :   Case No. 07-cv-00238-JJF
Creditor, on behalf of herself and others
similarly situated,

                        Plaintiff,

                     -against-

LEONARD ROSS and
JOHN/JANE DOE 1-20
DOE CO. 1-20

                     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

STATE OF NEW YORK  )
                  :ss.:
COUNTY OF NEW YORK )

EVE RACHEL MARKEWICH being duly sworn, deposes and says:

1.     I am an attorney admitted to practice law in the State of New York. In that capacity, I have represented defendant Leonard M. Ross, New York Ancillary Administrator of the Estate of Agnes Carvel since early 2000.

2.     I submit this affidavit to put before the Court certain exhibits to be reviewed in conjunction with Ross' motion to dismiss the amended complaint for lack of personal jurisdiction:

            (1)    Order dated July 5, 1995, suspending Pamela Carvel as Executor of the Estate of Thomas Carvel;

(2) Decision dated February 17, 2000 accepting Pamela Carvel's "resignation" as Executor of the Estate of Thomas Carvel;

(3) Approved Judgment dated June 11, 2007, removing Pamela Carvel as Executor of the Estate of Agnes Carvel;

(4) Memorandum & Order, *Pamela Carvel, as Executor of the Estate of Agnes Carvel, pro se v. Carvel Foundation Inc.,* United States District Court, Eastern District of New York 06-MC-0005 (DLI);

(5) Order, *In the Matter of the Final Accounting of Leonard M. Ross, as Ancillary Administrator c.t.a. of the Estate of Agnes Carvel,* United States District Court, Southern District of New York 07-Civ. 3504 (RMB).

EVE RACHEL MARKEWICH

Sworn to before me this 2▢
day of November, 2007

NOTARY PUBLIC

LAWRENCE M. ROSENSTOCK
Notary Public · State of New York
No. 02RO6154271
Qualified in New York County
My Comm. Expires Oct. 23, 2010

-2-

Carvel-affidavit of ERM.doc

## CERTIFICATE OF SERVICE

I, Sean M. Brennecke, hereby certify that on November 26, 2007, I caused to be

electronically filed a true and correct copy of the **Affidavit of Eve Rachel Markewich**

with the Clerk of Court by CM/ECF.

I further certify that I served a true and correct copy of the foregoing document on

the plaintiff in the manner indicated below:

### By Federal Express

Ms. Pamela Carvel
23 Old Brompton Road
Suite 159
London SW7 3SS
England

/s/ Sean M. Brennecke
David J. Margules (#2254)
Sean M. Brennecke (#4686)
BOUCHARD MARGULES & FRIEDLANDER, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
(302) 573-3500
dmargules@bmf-law.com
sbrennecke@bmf-law.com
Attorneys for Defendant Leonard Ross

# EXHIBIT 1

At a Surrogate's Court of the
County of Westchester, at 140
Grand Street in the City of White
Plains, New York, on the
5ᵗʰ day of ~~June~~, 1995.
July

PRESENT: HON. ALBERT J. EMANUELLI,

Surrogate

----------------------------------------------X
In the Matter of the Judicial Settlement   :
of the First and Final Account of          :
Proceedings of Robert M. Davis and Mildred :   ORDER
Arcadipane, as Executors of the Last Will  :
and Testament of                           :   File No. 3285/90
                                           :
                THOMAS CARVEL,             :
                                           :
                       Deceased.           :
----------------------------------------------X
                                           :

        The Court, in accordance with its Decision dated

April 13, 1995, its Order dated May 22, 1995 and the letter of the

Chief Clerk of this Court also dated May 22, 1995, having

scheduled a preliminary hearing to be held on June 12, 1995,

commencing at 9:30 a.m., to determine whether Agnes Carvel is a

person under disability as defined under SCPA § 103(40) for whom a

guardian ad litem should be appointed;

        Counsel having appeared, on behalf of the following

parties, for such hearing on that day as herein noted: Loeb & Loeb

for Agnes Carvel and Pamela Carvel; Albert Kalter, Esq. for

Herbert F. Roth; Kent Hazzard Jaeger Greer Wilson & Fay for Robert

M. Davis; Graubard Mollen Horowitz Pomeranz & Shapiro for Mildred

Arcadipane; W. Whitfield Wells for Betty Godley; and Donovan

Leisure Newton & Irvine for The Thomas and Agnes Carvel
Foundation;

Agnes Carvel having failed personally to appear before
this Court on such date and at such time in connection with such
preliminary hearing, which failure to appear was in contravention
of the Court's prior directive as contained in its April 13, 1995
Decision, its May 22, 1995 Order and the Chief Clerk's May 22,
1995 letter;

The Court having determined that the notice, provided by
counsel for Agnes Carvel, informing the Court and counsel that she
would not appear, having been delivered to the Court no earlier
than approximately 3:30 p.m. on the afternoon of Friday, June 9,
1995 (and, to counsel, after the close of the business day) was
neither timely nor did it set forth facts and circumstances
warranting a determination by this Court that Agnes Carvel's
absence from such preliminary hearing was justified;

Agnes Carvel having on June 12, 1995 tendered, by her
counsel, her resignation as co-executor under the Will of Thomas
Carvel;

The Court, having considered the appropriateness of (a)
Agnes Carvel's continued service as a trustee of the testamentary
trust created by the Will of Thomas Carvel and (b) the appointment
of a guardian ad litem for Agnes Carvel, as a beneficiary under
the Will of Thomas Carvel, and having considered the statement
contained in Agnes Carvel's Petition for Voluntary Guardianship,

-2-

dated June 5, 1995, included in the submission made to this court by Counsel' for Agnes Carvel, dated June 9, 1995 (the "June 9 submission") that "although mentally competent, [Agnes Carvel] is incapable of the care, custody and management of her estate by reason of age or physical infirmity";

The Court having reviewed the June 9 submission of counsel to Agnes Carvel, which indicates that Pamela Carvel has been appointed as the Limited Guardian of the property of Agnes Carvel, by order dated June 6, 1995 of the Circuit Court for Palm Beach County, Florida, Probate Division, and the Court having heard oral argument by all counsel present and having determined that, based thereon, Pamela Carvel has an inherent and irreconcilable conflict of interest as a result of her serving in the dual capacity of Executor and Trustee under the Will of Thomas Carvel, and as Limited Guardian of Agnes Carvel's property; and

The Court having considered the undisputed facts that, notwithstanding that either some or all of the stock of Chain Locations of America, Inc. ("Chain Locations") is an asset of the Estate of Thomas Carvel, Pamela Carvel effected the transfer of funds belonging to Chain Locations, in the amount of approximately $2,000,000, to the benefit of Agnes Carvel and transferred those funds to the Swiss Bank Corp. in London, England in the name of Agnes Carvel and Pamela Carvel;

The Court, upon agreement of the parties thereto, having assumed jurisdiction of a matter captioned <u>Agnes Carvel and Pamela</u>

Carvel, Individually and as Directors and Officers of Chain
Locations of America, Inc. v. Betty Godley, Mildred Arcadipane,
Robert M. Davis and Herbert F. Roth, as Executors of the Estate of
Thomas Carvel, (the "Supreme Court action") pending before the

Supreme Court of the State of New York, County of Westchester, *May 12, 1995*
*thus* *having been Transfered to This court by stipulation of the parties dated May 12, 1995*
(Index No. 07046/95), in which action a temporary restraining

order had been entered on April 28, 1995 by the Honorable Anthony
A. Scarpino, Jr., J.S.C.; it is therefore

ORDERED that, it appearing to the Court that Agnes
Carvel is a person under disability within the meaning of SCPA
§ 103(40), a guardian ad litem will be appointed, pursuant to SCPA
§ 403(2), for Agnes Carvel, as a beneficiary under the Will of
Thomas Carvel, such guardian to be selected by the Court; and it
is further

ORDERED that Agnes Carvel's resignation as executor of
the Estate of Thomas Carvel is hereby accepted and the letters
testamentary issued to Agnes Carvel are revoked; and it is further

ORDERED that, pending a full evidentiary hearing, Agnes
Carvel's powers to act as a trustee of the testamentary trust
created by the Will of Thomas Carvel are suspended; and it is
further

ORDERED that, pending a full evidentiary hearing, Pamela
Carvel's powers to act as an executor and trustee under the Will
of Thomas Carvel are suspended; and it is further

-4-

ORDERED that, pending a full evidentiary hearing, Agnes Carvel's and Pamela Carvel's powers to act as officers, directors or signatories of Chain Locations and Andreas Holdings Corporation are suspended and Pamela Carvel is further directed forthwith to turn over to Betty Godley all books, records, checks and like documents and materials in her custody, possession or control relating to such corporations; and it is further

ORDERED that, except as modified by the suspension, pending a full evidentiary hearing, of Agnes Carvel's and Pamela Carvel's powers to act as officers and directors of Chain Locations, the temporary restraining order entered in the Supreme Court action, brought by Agnes Carvel and Pamela Carvel, individually and as officers and directors of Chain Locations, is continued in effect for the time being; and it is further

ORDERED that Loeb & Loeb is to provide in writing to this Court and to all counsel, a detailed statement regarding the transfers of funds of Chain Locations by Pamela Carvel and/or Agnes Carvel, including all bank account information underlying such transfers, and shall do so by the end of the business day of June 12, 1995, such statement to include all supporting information that is in Loeb & Loeb's custody, possession or in the custody, possession or control of Agnes Carvel or Pamela Carvel; and it is further

ORDERED that all counsel listed above (except Loeb & Loeb) submit affidavits in form acceptable to the Court detailing

-5-

the fees incurred and expenses disbursed by the aforementioned
counsel (except Loeb & Loeb), or by the Estate, in connection with
their preparation for and attendance *that portion of the* for the June 12, 1995
preliminary hearing; and it is further;

   ORDERED that these rulings, having been made on the
record during the proceedings of June 12, 1995, are effective as
of that date. *which pertains to Agnes Carvel's appearance before the Court for a determination of whether a guardian ad litem should be appointed to protect her interests*

ENTER,

_____
(Surrogate)

-6-

# EXHIBIT 2

SURROGATE'S COURT : WESTCHESTER COUNTY
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

In the Matter of the Application of
Betty Godley, Mildred Arcadipane and
Robert M. Davis, as executors and                    **DECISION**
trustees of, and The Thomas and Agnes
Carvel Foundation, as remainderman              **FILE NO. 3285/1990**
under, the Last Will and Testament of

THOMAS CARVEL,

Deceased.

for a decree revoking letters
testamentary and letters of
trusteeship issued to Pamela Carvel
and revoking letters of trusteeship
issued to Agnes Carvel, and rescinding
certain actions taken by them, and
granting other relief.
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

EMANUELLI - S.

## REVOKE LETTERS

In this proceeding for revocation of letters, the Thomas and

Agnes Carvel Foundation, as remainderman under the Last Will and

Testament of Thomas Carvel, seeks partial summary judgment

pursuant to CPLR 3212 removing the respondent, Pamela Carvel, as

co-executrix of the decedent's estate and co-trustee of the

marital trust under the decedent's will.

## BACKGROUND

Much of the background of this estate is discussed in

numerous prior decisions of the court and familiarity with those

opinions will be assumed. For the purposes of this decision, it

is sufficient to note that Thomas Carvel died on October 21, 1990

leaving a will which was admitted to probate on February 25,

1991. Seven nominated executors, including Thomas' wife Agnes and his niece Pamela, were appointed to administer his estate ("Thomas' Estate" or the "Estate").

In 1994, two separate accounting were filed, the first by executors Davis and Arcadipane, and the second by executors "Roth", "Godley", "Agnes" and "Pamela". The seventh executor post-deceased.

The competing accounts differed in several respects, including inter-alia, the treatment of a corporation known as Chain Locations of America ("Chain"). The Roth and Arcadipane account reported the corporation as wholly owned by the decedent and hence the Estate, whereas the Agnes and Pamela account reported Chain as only half owned by the Estate with Agnes as the other 50% shareholder. Later, Agnes claimed a 93.3% shareholder interest in Chain. The issue was compounded on November 9, 1995 when the three executor/directors of Chain, namely, Pamela, Agnes and Godley passed a resolution declaring Agnes as the owner of 107 1/2 of the 115 shares of the common stock of Chain and a new certificate for 107 1/2 common shares was issued to Agnes Carvel. The resolution was predicated upon an erroneous legal opinion by attorney Leonard Ross (See, Estate of Carvel, NYLJ, Apr. 30, 1997, at 33, col 5). Thereafter between December 1994 and February 1995, Pamela, acting alone and without the knowledge or consent of her co-director, Godley, or her co-executors,

2

admittedly transferred more than $2 million of Chain's assets to a bank account at Swiss Bank Corp. in London in her name and Agnes' name alone without any nomenclature to identify these funds as belonging to the corporation. The transfers were made, she claimed, in purported repayment of an alleged contested claim by Agnes against Chain and Andreas Holding corp. (another Carvel closely held corporation). However, there had been no prior judicial determination of the claim as mandated by SCPA 1805.

On February 17, 1995, Godley filed with the court a petition seeking a return of the $2 million and a determination as to the true ownership of chain. Pamela and Agnes opposed the proceeding and moved for an order dismissing the application or in the alternative, for a determination affirming Agnes' claims. In a related hearing on June 12, 1995 Pamela was suspended as an executrix and trustee for having unlawfully transferred Chain assets from the corporation to herself and Agnes. Agnes resigned as executrix and was likewise suspended as trustee. In addition, Pamela, and her then attorney, John Lang, of Loeb and Loeb LLP, were ordered to furnish details of the overseas banking transaction. To date, these records still have not been produced, despite repeated demands by this court for their production.

Subsequently, while acting as Agnes' Florida court-appointed guardian and de facto caretaker, Pamela did not act affirmatively

3

to produce Agnes at a court-directed video conference, scheduled
to ascertain Agnes' physical capacity to be examined as to her
claims and allegations in these proceedings, or to produce court-
ordered medical records in connection with Agnes' motion for a
protective order. Likewise, Agnes' attorney, John Lang, while
admitting that he had not spoken to his client in several years,
and apparently acting upon Pamela's instructions, declined in
open court to contact his client directly, at the court's
suggestion, in order to determine if Agnes was aware of certain
settlement proposals. The proposals would have terminated the
litigation and settled all of Agnes' claims, both here and in
several other jurisdictions, in exchange for a cash payment to
Agnes of more than $8 million dollars.

This removal proceeding was filed shortly after the June 11
hearing. The petition accused Agnes and Pamela of a series of
unilateral actions involving the encumbrance and/or disposition
of Estate assets, the particulars of which are largely admitted.
This included: (i) Pamela's attempt to divest the Estate of its
shareholder interest in Chain without court approval or the
approval of her co-executors; (ii) Pamela's diversion of more
than $2 million of Chain funds to Swiss Bank Corp. accounts in
London; (iii) the entry by Pamela of a confession of judgment for
more than $4 million with the Dutchess County, New York Clerk's
office against Andreas in favor of Chain; (iv) the filing by

4

Pamela of UCC-1's encumbering property owned by the Estate, Chain and Andreas located in Dutchess County, New York, and (v) a lawsuit brought by Pamela and Agnes in Delaware Chancery Court in which they purported to act in capacities from which this court had previously suspended them.

The suspended fiduciaries were offered an immediate hearing on their suspensions but opted instead for extensive discovery. Accordingly, the court entered a series of omnibus discovery orders which directed the production of voluminous personal, estate and business records and the examination of several key witnesses, including Pamela.  The examinations occurred during 35 days of continuous depositions.

The Foundation now seeks summary judgment removing Pamela without a hearing as as executrix and trustee of Thomas' estate based upon what it describes as undisputed facts established in large measure by Pamela's concessions at her deposition which allegedly substantiate each of the factual predicates alleged in the petition as a grounds for removal.  According to the Foundation, the facts demonstrate that Pamela is unfit to serve as a fiduciary because she has repeatedly engaged in unilateral acts to the detriment of the Estate with flagrant disregard for her statutory and common law duties as a co-executor and co-trustee.

Pamela opposes the motion.  Nevertheless, she offers to

5

resign as both an executor and a trustee, not because she
acknowledges any of the accusations asserted against her, but
because, inter-alia, her position as executrix of Agnes' foreign
estate (Agnes died in August, 1998) places her in a conflict of
interest with her position as an executrix and trustee of Thomas'
estate.

The Foundation asserts that Pamela should not be permitted
to resign without an adjudication that her conduct has been
improper. More particularly, it claims that Pamela must be
removed as a fiduciary in these proceedings and held accountable
for her actions. To do otherwise, and thereby allow a fiduciary
accused of misconduct to simply resign, without consequences,
would, according to the Foundation, trivialize the grave
responsibility borne by all fiduciaries to faithfully discharge
their duties.

## LEGAL ANALYSIS AND THE COURT'S CONCLUSIONS

Initially, it must be noted that Pamela's reliance upon the
Court of Appeals decision in Matter of Duke, 87 NY2d 465, as
authority for the proposition that this court may not remove her
without first conducting an evidentiary hearing, is misplaced.
In Matter of Duke, supra, the Court of Appeals acknowledged
expressly that a Surrogate may summarily remove a fiduciary
"where the misconduct is established by undisputed facts or
concessions ... where the fiduciary's in-court conduct causes

6

such facts to be within the court's knowledge ... or where facts warranting amendment of letters are presented to the court during a related evidentiary proceeding ...". Accordingly, summary judgment in a removal proceeding is not per se inappropriate particularly where the parties have been afforded complete discovery and the motion is predicated upon an extensive documentary and testimonial record. Indeed, "[s]ummary judgment 'does not deny the parties a trial; it merely ascertains that there is nothing to try'" (In re Suffolk County Dep't of Social Servs., 83 NY2d 178, citing, Siegal, Ny Prac §278, at 407 [2d ed]). Thus if the record before the court is truly undisputed, as alleged, such that the allegations and grounds for removal are supported in almost every detail by Pamela's own admissions, it would be within the jurisdiction and authority of this court to remove the respondent without a hearing.

Having thus established the parameters of its authority, the court neverthelss elects to accept the respondent's resignation as executrix and trustee of the estate and trust and letters testamentary and of trusteeship heretofore issued to her are revoked. In accordance with SCPA 716 the respondent shall file a supplemental account within 90 days from the date of the order to be made herein. The discharge of the respondent shall be subject to a decree settling her account.

By accepting Pamela's resignation the court does not

7

correspondingly agree with the Foundation's characterization that
Pamela has been "honorabl[y] discharge[d]" thereby relieving her
of accountability for her actions.  Pamela's conduct as a
fiduciary and her campaign to thwart the legitimate processes of
estate administration present reasonable grounds to summarily
remove her or to schedule an immediate hearing on the application
for removal.  Her unwarranted actions have subjected the parties
to immeasurable expense and it is only to protect the estate from
the further expense of additional proceedings that the court has
accepted her resignation.  Nevertheless, Pamela remains
accountable and subject to surcharge.  However, because the
instant proceeding does not seek damages of the respondent for
breach of fiduciary duty, and neither the theory of liability nor
the elements of damages are before the court for consideration,
it would be more appropriate and in the interest of judicial
economy to permit those issues to be raised in the proceeding to
judicially settle the respondent's account.  To that end, the
Foundation and any other interested party is authorized within 30
days of filing of the aforesaid supplemental account, to file
amended objections to the account of Pamela Carvel seeking
appropriate damages as a consequence of her alleged breach of
fiduciary duty.

In consideration of the foregoing, the motion for partial
summary judgment revoking letters testamentary and of trusteeship

8

heretofore issued to Pamela Carvel is denied.  That part of the
petition which seeks to revoke letters is dismissed as moot in
view of the respondent's resignation.  The balance of the
proceeding is restored to the calendar of March 8, 2000 for
further disposition.

        Settle order.

February 17, 2000

S U R R O G A T E

Orrick Herrington & Sutcliffe LLP
 Attorneys for Petitioner
 The Thomas and Agnes Carvel Foundation

Spitzer & Feldman
 Attorneys for Respondent Pamela Carvel

Kent Hazzard Jaeger Greer Wilson & Fay
 Attorneys for Respondent Robert Davis

W. Whitfield Wells
 Attorney for Respondent Betty Godley

Cassin Cassin & Joseph LLP
 Attorneys for Mildred Arcadipane

Shamberg Marwell Hockerman Davis & Hollis P.C.
 Attorneys for Respondent George Lambert,
 Public Administrator of Westchester County

9



<u>Neutral Citation Number: [2007] EWHC 1314 (Ch)</u>

<u>Case No: HC06C03337</u>

**<u>IN THE HIGH COURT OF JUSTICE</u>**
**<u>CHANCERY DIVISION</u>**

<u>Royal Courts of Justice</u>
<u>Strand, London, WC2A 2LL</u>

<u>Date: 11 June 2007</u>

Before :

**<u>MR JUSTICE LEWISON</u>**
- - - - - - - - - - - - - - - - - - - - - -
Between :

| | |
|---|---|
| **THE THOMAS AND AGNES CARVEL<br>FOUNDATION**<br>- and -<br>**(1) PAMELA CARVEL<br>(2) CARVEL FOUNDATION, INC.** | <u>**Claimant**</u><br><br><br><u>**Defendants**</u> |

- - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - -

**Mr Francis Barlow QC** (instructed by **Herbert Smith LLP**) for the **Claimant**
**Mr Michael Gibbon** (instructed by **Penningtons**) for the **First Defendant**
**Mr Jeremy Dable** for the **Second Defendant**

Hearing dates: 23, 24 May 2007
- - - - - - - - - - - - - - - - - - - - -

## Approved Judgment

I direct that pursuant to CPR PD 39A para 6.1 no official shorthand note shall be taken of this
Judgment and that copies of this version as handed down may be treated as authentic.

*Kevin Lewison*

**THE HONOURABLE MR JUSTICE LEWISON**

Al-proven Judgment

## Mr Justice Lewison :

Introduction ................................................................................................... 2
The underlying facts ....................................................................................... 2
The law ........................................................................................................... 5
    Jurisdiction ................................................................................................... 5
    Discretion .................................................................................................... 12
Application to set aside ................................................................................. 15

## Introduction

1.  The Claimant, The Thomas and Agnes Carvel Foundation, seeks a summary order (a) replacing the First Defendant, Pamela Carvel, currently sole personal representative of Agnes Carvel deceased, with a neutral, independent professional person pursuant to section 50 of the Administration of Justice Act 1985 or section 1 of the Judicial Trustees Act 1896; and (b) setting aside orders obtained by Pamela Carvel in the Chancery Division for the payment to her of over £8 million out of Agnes Carvel's estate. Mr Francis Barlow QC appears for the claimant. Mr Michael Gibbon appears for Pamela Carvel and Mr Jeremy Dable for the second defendant, which is the named residuary beneficiary under Agnes Carvel's last will.

2.  The underlying facts are not in any real dispute; and I take the narrative largely from Mr Barlow's full and helpful written argument.

## The underlying facts

3.  The late Thomas Carvel ("Thomas") made a large fortune in the ice cream business in the USA. He died in 1990, and his wife Agnes Carvel ("Agnes"), died in 1998. Thomas and Agnes had no children. Pamela Carvel ("Pamela") was Thomas' niece and Agnes' niece by marriage.

4.  On 13 February 1988 Thomas and Agnes executed mutual, mirror-image wills. By her 1988 Will (the "1988 Will") Agnes left her estate on trust for Thomas if surviving for life with remainder on trust for The Thomas and Agnes Carvel Foundation (the "Foundation"). Thomas' 1988 Will was in similar form. The Foundation is a not-for-profit corporation incorporated in 1976 in the State of New York. By a simultaneous agreement (the "Reciprocal Will Agreement") Thomas and Agnes agreed that during their joint lives they would make no gratuitous transfers of property nor alter the provisions of their 1988 Wills without the consent of the other and that the survivor would make no such gratuitous transfers or alterations. Thomas died on 21st October 1990. His 1988 Will was admitted to probate in New York by the Surrogate's Court of the State of New York, County of Westchester; and seven executors, including Agnes and Pamela, were appointed to administer his estate. The Surrogate's Court is the court of probate for the State of New York.

5.  Following Thomas' death, Agnes, in the belief that her 1988 Will had been lost, made a further will on 21 November 1990 (the "1990 Will"). Apart from the omission of the life interest in favour of Thomas the terms of Agnes' 1990 Will were essentially identical with those of the 1988 Will. It, too, left Agnes' residuary estate to the

Foundation. On 22 April 1991 Agnes created a revocable trust known as "The Agnes Carvel 1991 Trust" (the "1991 Trust") under which Agnes took a life interest in the trust fund with remainder on her death upon trust to pay: her funeral and administration expenses and debts and subject thereto upon trust for the Foundation or some other charitable trust or corporation to be created by the Trustees. Agnes subsequently transferred property of substantial value to the 1991 Trust.

6.    On 7 July 1995 Agnes made a new will (the "1995 Will") revoking all former wills, appointing Pamela her sole executrix and bequeathing her residuary estate to the Second Defendant Carvel Foundation, Inc. ("Carvel-Florida"). Carvel-Florida is a not-for-profit corporation which was incorporated in Florida by Pamela and Agnes on the same day as the 1995 Will was executed. Pamela was a founding director of Carvel-Florida and following Agnes' death in 1998 became the registered agent and thus the person primarily responsible for accepting service of process on behalf of the corporation. Pamela resigned from both positions in March 2003.

7.    In March 1995 Pamela and Agnes moved to London. The circumstances in which they did so are contentious, but do not matter on this application. Agnes died in London on 4 August 1998. On 2 October 1998 Pamela obtained probate of the 1995 Will from the Principal Probate Registry. The terms of the grant show that in applying for probate Pamela adopted the "excepted estates" procedure. Under the prevailing regulations (The Capital Transfer Tax (Delivery of Accounts) Regulations 1981 as amended) this procedure was available in a case where (among other things):

(1)  the deceased died domiciled in the United Kingdom;

(2)  the value of that person's estate was wholly attributable to property passing under his will or intestacy (or under a nomination taking effect on death or by survivorship);

(3)  not more than £50,000 represented value attributable to property situated outside the jurisdiction; and

(4)  the gross value of the estate (including chargeable transfers) did not exceed £200,000.

8.    In order to obtain probate Pamela swore an oath that the conditions were satisfied. She says that she believed they were. I am not in a position to find that she is not telling the truth; although her belief, if true, was naïve. The effect of the regulations is that, in cases to which they applied, it was not necessary to provide an account to the Inland Revenue.

9.    In August 1998, within days of Agnes' death, the Foundation instituted proceedings in the Westchester Surrogate's Court to enforce the Reciprocal Will Agreement and to avoid certain pre-death transactions alleged to have been shams; and also alleged to have been effected with Pamela's connivance in violation of that agreement.

10.   Agnes' estate was represented in those proceedings by Leonard Ross, a New York attorney. According to a witness statement that he subsequently made, he had been designated by Pamela as an ancillary administrator; and his appointment as ancillary administrator was accepted by the Westchester Surrogate's Court on 18 August 1999. Under New York law Pamela, as a foreign fiduciary, could not represent the estate in New York. However, Pamela was a party to the action in two capacities: in her

personal capacity and as Trustee of the Realities Trust, an entity to which property had been transferred and to which the Foundation claimed title by virtue of the Reciprocal Will Agreement. These proceedings culminated in a Decision After Trial dated 1 April 2002 given by Surrogate Scarpino. I will return to what the Surrogate decided in due course; but in summary he held (i) that the Reciprocal Will Agreement was valid and enforceable, (ii) that the execution of the 1990 Will and the 1991 Trust were not breaches of the Reciprocal Will Agreement, (iii) that the execution of the 1995 Will "contravenes the estate plan created in 1988 and clearly constitutes a total breach, of the Reciprocal Agreement" (iv) that the Foundation was entitled to receive the assets of Agnes' estate subject to the payment of reasonable debts and administration expenses and (v) that the Foundation was entitled to a transfer of those assets that had been transferred to the Realities Trust. The Surrogate's decision was embodied in a decree dated 8 July 2002 and was affirmed by the Appellate Division of the Supreme Court of New York.

11.    On 13 June 2003 Pamela in her personal capacity, and acting as a litigant in person, issued a Claim Form in the Chancery Division of the High Court in England against herself as sole defendant in her capacity "as Executor of the Estate of Agnes Carvel" claiming the sum of £6,640,897.79 together with accrued interest of £1,148,827.90 and continuing interest at the daily rate of £1,455.54 until payment. The claim was based on three categories of expense:

   i)      Sums which Pamela said she had incurred on behalf of Agnes during her lifetime;

   ii)     Debts which Agnes had contracted but had not paid; and

   iii)    Sums which Pamela had incurred as Agnes' personal representative and in respect of which she claimed to be entitled to indemnity from the estate.

12.    By Order dated 24th July 2003 Deputy Master Behrens ordered Carvel-Florida to be joined as a defendant in place of Pamela. By Order dated 8th January 2004 Deputy Master Weir ordered Carvel-Florida, on its own admission of the full amount of the sum claimed, to pay to Pamela the sum of £8,085,095.51 together with £800 costs. Carvel-Florida's admission of liability was signed by Pamela's mother Linda Carvel. By order dated 6 May 2004 Master Price amended Deputy Master Weir's Order by providing that the sum of £8,085,095.51 be paid from Agnes' estate upon Carvel-Florida "as residuary beneficiary appointed to represent the said estate" consenting to the Order. The Chancery proceedings were issued and the Chancery order obtained after the Surrogate's decision and decree declaring that the Reciprocal Will Agreement was enforceable, that the 1995 Will was a "total breach" of that Agreement and that the Foundation was entitled to receive Agnes' estate; and after the Surrogate had ordered the fiduciaries of Agnes' estate to perform her contract.

13.    On 14th April 2005 Pamela petitioned the Florida Circuit Court for the County of Broward, a court with no previous experience of the Carvel estate litigation, for an order "domesticating" (or registering) the Chancery Order. By the Petition Pamela petitioned in her personal capacity and stated on oath that the Chancery Order was final and conclusive in the United Kingdom, that there was no appeal pending, that no opposition to the recording of the Chancery Order had been returned by the Broward County Administrator and that Carvel-Florida had been appointed to represent the

estate and had consented to the Order. By Order dated 10th May 2005 and made in favour of Pamela personally the Circuit Court for Broward County ordered that the Chancery Order be treated as a judgment of that Court.

14.   Pamela did not give notice to the Foundation of the Chancery proceedings in England or any of the orders made in those proceedings; or indeed of the petition to domesticate the order.

15.   On 26 August 2005 Pamela, again without notice to the Foundation and without notice to Mr Ross (who was still the ancillary administrator of the estate in New York), registered the domestication order with the Supreme Court of New York for Nassau County, another court which had had no previous dealings with Agnes' estate.

16.   On 29th August 2005 the Court issued a writ of execution against the estate of Agnes in the sum of US$15,929,214.15 (the dollar equivalent of the sum payable under the Chancery order). The writ of execution directed to the Sheriff in favour of Pamela personally was subsequently served on The Bank of New York and the firm of Edward Jones, which both held assets on behalf of the estate collectively worth in excess of US$9 million. The Bank of New York and Edward Jones refused to release the funds without a "turnover order" (a formal order of the court confirming their liability to release the funds). Pamela accordingly issued a petition in which she stated on oath that "the estate of Agnes" had received notice of the Domestication Order and did not oppose it. No notice of this petition was given to the Foundation or to Mr Ross.

17.   On 29 December 2005 the Court for Nassau County issued a temporary restraining order prohibiting Pamela from enforcing the Chancery order and subsequently transferred the proceedings to the Surrogate's Court. Also on 29 December 2005 the Surrogate's Court issued a temporary injunction in similar terms. On 30 December 2006 the Foundation intervened in the proceedings in the Court for Broward County and obtained a stay of the domestication order on 10 January 2006. The Order was vacated on 31 January 2006. Despite the temporary restraining orders issued by the Florida Court, the Court for Nassau County and the Surrogate's Court Pamela, on 20 January 2006, registered a copy of the Chancery Order in the Federal District Court for the Eastern District of New York. She did not disclose the existence of the restraining orders. Nor did she give prior notice to the Foundation or Leonard Ross. Her application was dismissed on 29 March 2006.

## The law

### Jurisdiction

18.   The court has no inherent jurisdiction to remove a personal representative: *Re Ratcliff* [1898] 2 Ch 352 at 356. The traditional remedy was an administration action. But an administration action was (in the words of the Law Reform Committee's 23rd Report) "an extremely clumsy, costly and time consuming procedure and in practice it is only in exceptional cases that it can be recommended". However, once the estate has been administered, the personal representative becomes a trustee; and at that stage the court's inherent jurisdiction to control trusts arises: *Re Smith* (1880) 42 Ch D 302. A power to remove a personal representative was introduced by the Judicial Trustees Act 1896. But the practice and procedure under the 1896 Act was also considered to

be cumbersome and over-formal, with the result that a new power to remove a personal representative was introduced by section 50 of the Administration of Justice Act 1985.

19.    The relevant parts of that section read as follows:

"(1)    Where an application relating to the estate of a deceased person is made to the High Court under this subsection by or on behalf of a personal representative of the deceased or a beneficiary of the estate, the court may in its discretion—

(a)    appoint a person (in this section called a substituted personal representative) to act as personal representative of the deceased in place of the existing personal representative or representatives of the deceased or any of them; or

(b)    if there are two or more existing personal representatives of the deceased, terminate the appointment of one or more, but not all, of those persons.

...

(4)    Where an application relating to the estate of a deceased person is made to the court under subsection (1), the court may, if it thinks fit, proceed as if the application were, or included, an application for the appointment under the Judicial Trustees Act 1896 of a judicial trustee in relation to that estate.

(5)    In this section "beneficiary", in relation to the estate of a deceased person, means a person who under the will of the deceased or under the law relating to intestacy is beneficially interested in the estate."

20.    The application is formally made under section 50. However, as an alternative Mr Barlow also relies on section 1 of the Judicial Trustees Act 1896, either through the gateway provided by section 50 (4); or as an original application under the 1896 Act. The relevant provisions of section 1 of the 1896 Act read as follows:

"(1)    Where application is made to the court by or on behalf of the person creating or intending to create a trust, or by or on behalf of a trustee or beneficiary, the court may, in its discretion, appoint a person (in this Act called a judicial trustee) to be a trustee of that trust, either jointly with any other person or as sole trustee, and, if sufficient cause is shown, in place of all or any existing trustees.

(2)    The administration of the property of a deceased person, whether a testator or intestate, shall be a trust, and the executor or administrator a trustee, within the meaning of this Act.

...

(7)    Where an application relating to the estate of a deceased person is made to the court under this section, the court may, if it thinks fit, proceed as if the application were, or included, an application under section 50 of the Administration of Justice Act 1985 (power of High Court to appoint substitute for, or to remove, personal representative)."

21.    The first question is: who is entitled to apply under these sections? So far as section 50 is concerned, the answer so far as this case is concerned, is: a person who "under the will of the deceased" is beneficially interested in the estate. The natural meaning of the quoted phrase is a person named in (or one of a class identified in) the will which has been admitted to probate. That, after all, will be the will in relation to which the impugned personal representative has been appointed. Moreover, the use of the definite article ("the" will) seems to me to presuppose that there is only one relevant will. The Foundation is not, however, named in Agnes' 1995 will as a beneficiary. It claims its beneficial entitlement under the doctrine of mutual wills.

22.    Mr Barlow submitted that "the will" in section 50 (4) could be read as "a will"; or that "the will" meant the *operative* will in the sense that it controlled the devolution of the deceased's estate or part of it. Accordingly, he said, although the Foundation was not named as a beneficiary in the 1995 will, its entitlement derived from one or more of Agnes' previous wills, which she had agreed not to revoke. I do not agree that "the" will can be read as "a" will. A will that has never come into operation has no legal effect at all. To give such an extended meaning to the phrase would go far beyond what Parliament can be supposed to have intended. I am inclined to agree that "the will" means "the operative will", but it must mean the operative will of the deceased whose personal representative is sought to be removed. So, it still leaves open the question: does the Foundation claim under any will of Agnes?

23.    So far as English law is concerned, the doctrine of mutual wills is founded on the principle stated by Lord Camden in *Dufour v. Pereira* (1769) Dick. 419:

    "The instrument itself is the evidence of the agreement; and he, that dies first, does by his death carry the agreement on his part into execution. If the other then refuses, he is guilty of a fraud, can never unbind himself, and becomes a trustee of course. For no man shall deceive another to his prejudice. By engaging to do something that is in his power, he is made a trustee for the performance, and transmits that trust to those that claim under him."

24.    In *Re Hagger* [1930] 2 Ch 190 Clauson J amplified the principle:

    "To my mind *Dufour v. Pereira* decides that where there is a joint will such as this, on the death of the first testator the position as regards that part of the property which belongs to the survivor is that the survivor will be treated in this Court as holding the property on trust to apply it so as to carry out the effect of the joint will. As I read Lord Camden's judgment in *Dufour v. Pereira* that would be so, even though the survivor did not signify his election to give effect to the will by taking

benefits under it. But in any case it is clear that Lord Camden has decided that if the survivor takes a benefit conferred on him by the joint will he will be treated as a trustee in this Court, and he will not be allowed to do anything inconsistent with the provisions of the joint will."

25.    Although these cases were concerned with joint wills, the same principle applies to mutual wills. As Snell puts it (para 22-34):

"Any will which the surviving testator may make to replace the first will will be valid. The agreement cannot make the first will irrevocable. His personal representative will, however, take the property subject to the trust arising under the prior agreement."

26.    In *Birmingham v Renfrew* (1937) 57 CLR 666 Latham C.J described it as "a trust which is declared by the law to affect the conscience of [the survivor's] executor and of the volunteers who are devisees or legatees under his will."

27.    The essential point, to my mind, is that the trust does not arise under the will of the surviving testator. Nor does it arise under any previous will of the surviving testator. It arises out of the agreement between the two testators not to revoke their wills, and the trust arises when the first of the two dies without having revoked his will. In so far as there is an "operative will", it seems to me that it is the will of the first testator (and his death with that will unrevoked) which brings the trust into effect. That being so, I do not consider that a person who claims under the doctrine of mutual wills is a person beneficially interested in the estate *under the will of the deceased.* It follows, in my judgment, that no valid application can be made by such a person under section 50 of the Administration of Justice Act 1985.

28.    Section 1 of the Judicial Trustees Act 1896 defines neither a trust nor a beneficiary. Mr Gibbon said that the jurisdiction under the 1896 Act was co-extensive, so far as estates are concerned, with that under section 50 of the 1985 Act. I do not see why that should be so; nor do I consider that there is any presumption to that effect. The jurisdictions may overlap, but there is no reason why they should be co-extensive. In *Re Marshall's Will Trusts* [1945] Ch 217 Cohen J said that the word trust was to be given its ordinary meaning; and he adopted, as its ordinary meaning, the definition then to be found in Underhill on Trusts:

"A trust is an equitable obligation, binding a person (who is called a trustee) to deal with property over which he has control (which is called the trust property) for the benefit of persons (who are called the beneficiaries or cestuis que trusts), of whom he may himself be one, and any one of whom may enforce the obligation."

29.    As Clauson J made clear the survivor of two persons who make mutual wills is treated as a trustee, and as Lord Camden said the trust binds those who claim under him. Accordingly, in my judgment the survivor and his executor are trustees in the usual sense of that word. A person entitled to enforce the trust thus imposed by law is, in my judgment, a beneficiary. In my judgment, therefore, although a person claiming under the English doctrine of mutual wills is not entitled to make an application under

section 50 of the Administration of Justice Act 1985, he is entitled to apply under section 1 of the Judicial Trustees Act 1896. If that is wrong, then I consider that the personal representative administering the estate of the survivor of two testators who made mutual wills is a trustee for the purposes of the 1896 Act, by reason of the extended definition in section 1 (2); and the person who claims to be entitled under the doctrine of mutual wills is interested in the assets being so administered, and is therefore a beneficiary for the purposes of the 1896 Act.

30. Mr Barlow rightly accepted that a mere creditor of the estate could not be said to be a beneficiary of the estate; and consequently had no standing to apply for the removal of a personal representative. So it is necessary at this stage to consider what Surrogate Scarpino decided about the status of the Foundation. Mr Gibbon warned me against reading the Surrogate's decision by the light of nature, because there was no evidence of the law that he applied, nor of the procedures which governed proceedings in the Surrogate's Court. However, it seems to me that if there was to be any challenge to the usual presumption that foreign law is the same as English law, the burden would have been on Pamela to take up that challenge by evidence. There was none.

31. The Surrogate's essential reasoning on the Reciprocal Will Agreement is contained in pages 20 and 21 of his written judgment. He said (omitting citation of authority):

> "The Foundation is correct that agreements, such as the Reciprocal Agreement, are enforceable in equity. It is also correct that the Court may not set up Agnes' 1988 or 1990 will as her last will and testament. However, the Foundation's contention that the equitable remedy for breach of the Reciprocal Agreement is to deem it a creditor of Agnes' estate is correct only to the extent of Agnes' residuary estate. The proper remedy is an order directing the fiduciary to perform the obligation which the testator had assumed. Agnes' obligation under the Reciprocal Agreement was to name the Foundation as the residuary beneficiary of her estate. Accordingly the Foundation's remedy is to receive the residue of Agnes' estate. This was the relief accorded in [an earlier case] where the beneficiaries under the decedent's later will were deemed to hold half of her estate as a resulting trust in favor of the husband's relatives – those who, though the beneficiaries of the joint will, were cut out by the wife's later will."

32. It is true that there is a reference to the Foundation being deemed to be a "creditor" of Agnes' estate. But the remainder of the Surrogate's reasoning shows clearly, to my mind, that he was deciding that the Foundation was beneficially entitled to the residuary estate itself. First he said that the Reciprocal Will Agreement was enforceable in equity. It is not therefore a case of debt or damages which would make someone a creditor of the estate. Second, the order is an order directing the fiduciary to perform the testator's obligation. This is not an order sounding in money; but an order of specific performance. Third, he said that the Foundation's remedy was to receive Agnes' residuary estate. If it is entitled to receive the residue of the estate, it is hard to see how it is not beneficially entitled to it. Fourth, the justification for the Surrogate's conclusion is a reference to authority in which it was held that a resulting trust had arisen. Plainly the disappointed beneficiary was a beneficiary under that

resulting (or, as we would perhaps say, constructive) trust. In addition the decree which embodied his decision was an order directing the fiduciaries of the estate to perform the contract of the deceased; and not a money judgment. In my judgment the Surrogate clearly decided that the Foundation was beneficially entitled to Agnes' residuary estate.

33.   The next question is whether the Foundation can rely on the Surrogate's decision in these proceedings.

34.   The Foundation is not attempting to enforce the Surrogate's decree. Rather, it is relying on his decision to establish an issue estoppel as against Pamela to the effect that it is a beneficiary of the estate. A foreign judgment will give rise to an issue estoppel in subsequent English proceedings if (i) the judgment is a final and conclusive judgment on the merits of a court of competent jurisdiction, (ii) the issue in question is the same and was necessary for the decision of the foreign court; and (iii) the parties to the English litigation are the same parties (or their privies) as in the foreign litigation.

35.   It is common ground that the Surrogate's Court was a court of competent jurisdiction; that the Surrogate's decision was a decision on the merits, and that it is final and binding. The issue that the Surrogate decided was that the Reciprocal Will Agreement was binding, with the consequence that the Foundation was beneficially entitled to Agnes' residuary estate. That is the same issue as that on which its entitlement to apply under the Judicial Trustees Act depends. The contentious issue was whether the parties to the litigation are the same parties (or their privies) as in the foreign litigation.

36.   In *Gleeson v J Wippell & Co Ltd* [1977] 1 WLR 510 Megarry V-C said at page 515:

> "Second, it seems to me that the substratum of the doctrine is that a man ought not to be allowed to litigate a second time what has already been decided between himself and the other party to the litigation. This is in the interest both of the successful party and of the public. But I cannot see that this provides any basis for a successful defendant to say that the successful defence is a bar to the plaintiff suing some third party, or for that third party to say that the successful defence prevents the plaintiff from suing him, unless there is a sufficient degree of identity between the successful defendant and the third party. I do not say that one must be the alter ego of the other: but it does seem to me that, having due regard to the subject matter of the dispute, there must be a sufficient degree of identification between the two to make it just to hold that the decision to which one was party should be binding in proceedings to which the other is party. It is in that sense that I would regard the phrase 'privity of interest.' "

37.   This test was approved by the House of Lords in *Johnson v Gore Wood & Co* [2002] 2 AC 1.

38.    As I have said, Pamela was a party to the litigation before the Surrogate; but not in her
capacity as Agnes' personal representative. The reason why she did not appear in that
capacity was because Agnes' estate was represented by the ancillary administrator,
Mr Ross. The issue before the Surrogate was whether the Reciprocal Will Agreement
was binding on Agnes; and through her on her fiduciary. Agnes' fiduciary in New
York was Mr Ross; and her fiduciary in England is Pamela. Mr Gibbon pointed out
that there was now considerable hostility between Pamela and Mr Ross. I do not
consider that that matters. What matters is that they represent the same estate, whether
they do so amicably or at each others' throats. Since both are fiduciaries in relation to
the same estate; and both ultimately derive their authority from the same will I
consider that there is a sufficient degree of identification between the two as to make
it just to hold that the decision to which Mr Ross was party as ancillary administrator
binds Pamela as personal representative. The fact that Pamela participated in the
proceedings in her personal capacity and as trustee of the Realities Trust, and
advanced arguments in opposition to the Foundation, adds to the justice of treating her
as bound by the Surrogate's decision, even if that would not be enough on its own.

39.    On the basis that Pamela is bound by the Surrogate's decision, is Carvel-Florida also
bound? Carvel-Florida was not formally a party to the proceedings before the
Surrogate. However, Pamela was throughout a director and the registered agent of
Carvel-Florida. In my judgment Carvel-Florida is also a privy for the purposes of
issue estoppel. As I have said, the Surrogate decided that the Reciprocal Will
Agreement bound Agnes as from the time that Thomas died. Her personal obligation
was to nominate the Foundation as the residuary beneficiary under her will; and the
effect of her not having done so was to make the Foundation beneficially entitled to
her residuary estate. Carvel-Florida can have no better claim than Agnes, through
whom it claims. In my judgment that is enough to make Carvel-Florida a privy. Mr
Barlow also had a second string to his bow. He relied on the principle stated by Lord
Penzance in *Wytcherley v. Andrews* (1871) L. R. 2 P. & D. 327, 328.

> "There is a practice in this court, by which any person having
> an interest may make himself a party to the suit by intervening;
> and it was because of the existence of that practice that the
> judges of the Prerogative Court held, that if a person, knowing
> what was passing, was content to stand by and see his battle
> fought by somebody else in the same interest, he should be
> bound by the result, and not be allowed to re-open the case.
> That principle is founded on justice and common sense, and is
> acted upon in courts of equity, where, if the persons interested
> are too numerous to be all made parties to the suit, one or two
> of the class are allowed to represent them; and if it appears to
> the court that everything has been done bona fide in the
> interests of the parties seeking to disturb the arrangement, it
> will not allow the matter to be re-opened."

40.    Although the principle originated in probate proceedings, it is not confined to them:
*Nana Ofori Atta II v. Nana Abu Bonsra II* [1958] A.C. 95. In *House of Spring
Gardens Ltd v Waite* [1991] 1 QB 241 Stuart-Smith LJ said that "justice and common
sense" did not require it to be confined to probate actions. It is inconceivable that,
through Pamela, Carvel-Florida did not know about the proceedings in the Surrogate's

Court. However, it is here that Mr Gibbon's point about my lack of knowledge of procedure in the Surrogate's Court has force. It will be seen that Lord Penzance's statement of principle is predicated on the ability of the party estopped to be able to make himself a party to the suit. I do not know whether that option would have been open to Carvel-Florida; so in my judgment it would be unsafe for me to base my decision on that ground. But one ground is enough.

41. Mr Gibbon said that if a person was not entitled to apply under section 50 of the Administration of Justice Act 1985, the gateway to proceeding under the Judicial Trustees Act by virtue of section 50(4) remained firmly locked. The argument was that an "application under subsection (1)" meant a *valid* application. However, it is not always the case that an "application" referred to in a statute must be a valid application in the sense of an application that will succeed: compare *Zenith Investments (Torquay) Ltd v Kammins Ballrooms Co Ltd* [1971] 1 WLR 1751. One of the purposes of giving the court the power to proceed under the 1896 Act when the applicant has applied under the 1985 Act is, in my judgment, to enable the court to cure what are effectively purely procedural defects. If I am wrong about that, then Mr Barlow said that he would amend the application to claim relief in an original application under the 1896 Act. Mr Gibbon did not suggest that Pamela would suffer any prejudice if such an application were made. If necessary I would have permitted the amendment.

42. I hold therefore that the Foundation is entitled to make its application under the Judicial Trustees Act 1896.

*Discretion*

43. Having held that I have jurisdiction, the next question is whether I should exercise it in the Foundation's favour. I should say that Carvel-Florida opposes the application. It says that Pamela has proved to be a doughty champion of Agnes' estate and that another personal representative would not have her tenacity. Pamela herself also opposes the application.

44. It is common ground that, in the case of removal of a trustee, the court should act on the principles laid down by Lord Blackburn in *Letterstedt v Broers* (1884) 9 App Cas 371, and that in the case of removing a personal representative similar principles should apply. Whether I am right in concluding that Pamela is a trustee; or whether she is no more than a personal representative, the principles are therefore the same. At page 386 Lord Blackburn referred with evident approval to a passage in Story's Equity Jurisprudence:

> "But in cases of positive misconduct, Courts of Equity have no difficulty in interposing to remove trustees who have abused their trust; it is not indeed every mistake or neglect of duty, or inaccuracy of conduct of trustees, which will induce Courts of Equity to adopt such a course. But the acts or omissions must be such as to endanger the trust property or to shew a want of honesty, or a want of proper capacity to execute the duties, or a want of reasonable fidelity."

45. He continued:

"It seems to their Lordships that the jurisdiction which a Court of Equity has no difficulty in exercising under the circumstances indicated by Story is merely ancillary to its principal duty, to see that the trusts are properly executed. This duty is constantly being performed by the substitution of new trustees in the place of original trustees for a variety of reasons in non-contentious cases. And therefore, though it should appear that the charges of misconduct were either not made out, or were greatly exaggerated, so that the trustee was justified in resisting them, and the Court might consider that in awarding costs, yet if satisfied that the continuance of the trustee would prevent the trusts being properly executed, the trustee might be removed. It must always be borne in mind that trustees exist for the benefit of those to whom the creator of the trust has given the trust estate."

46.     The overriding consideration is, therefore, whether the trusts are being properly executed; or, as he put it in a later passage, the main guide must be "the welfare of the beneficiaries". He referred to cases in which there was a conflict between trustee and beneficiary and continued:

"As soon as all questions of character are as far settled as the nature of the case admits, if it appears clear that the continuance of the trustee would be detrimental to the execution of the trusts, even if for no other reason than that human infirmity would prevent those beneficially interested, or those who act for them, from working in harmony with the trustee, and if there is no reason to the contrary from the intentions of the framer of the trust to give this trustee a benefit or otherwise, the trustee is always advised by his own counsel to resign, and does so. If, without any reasonable ground, he refused to do so, it seems to their Lordships that the Court might think it proper to remove him; but cases involving the necessity of deciding this, if they ever arise, do so without getting reported."

47.     He added, however, at page 389:

"It is quite true that friction or hostility between trustees and the immediate possessor of the trust estate is not of itself a reason for the removal of the trustees. But where the hostility is grounded on the mode in which the trust has been administered, where it has been caused wholly or partially by substantial overcharges against the trust estate, it is certainly not to be disregarded."

48.     The Foundation's application to remove Pamela is mainly based on her conduct of proceedings thus far. It is a striking fact that after the Surrogate had ruled that the Foundation was entitled to receive Agnes' residuary estate (a decision that Pamela knew about) she issued proceedings in the High Court in England in which she was both claimant and defendant, seeking payment of monies from the estate without

notifying the Foundation. She pursued those proceedings until the Chancery order was made, still without notifying the Foundation. As I have said, the claim was based on three categories of expense:

i)   Sums which Pamela said she had incurred on behalf of Agnes during her lifetime;

ii)  Debts which Agnes had contracted but had not paid; and

iii) Sums which Pamela had incurred as Agnes' personal representative and in respect of which she claimed to be entitled to indemnity from the estate.

49.  The first of these categories was a claim as creditor of the estate against the estate. In other words, this was Pamela's personal claim against the estate. The second category is more obscure, but seems also to have been Pamela's personal claim against the estate. The third was a claim in her representative capacity (in effect against the beneficiaries). A pause for thought ought to have led Pamela to realise that there was an obvious conflict of interest between her personal claims and her duties as personal representative. The procedural nonsense of a claim to which she was both claimant and sole defendant ought to have been obvious too. Mr Gibbon pointed out that Pamela was acting as a litigant in person. However, Pamela is an experienced litigant. I do not regard the fact that she was a litigant in person as an excuse. If anything, it counts against her, because a responsible personal representative, with the interests of the estate at heart, would have consulted a lawyer.

50.  Mr Gibbon submitted that Pamela was not obliged to join the Foundation as a defendant to her claims against the estate. He may well be right about that. CPR Part 64.4 says that persons with an interest in or claim against the estate "may" be made parties to the claim. But in my judgment a responsible personal representative, knowing of the Surrogate's decision, and pursuing a personal claim for over £7 million, would have given notice of the claim to the Foundation. In his Order dated 31 January 2006 vacating the domestication order Judge Andrews of the Broward County Court commented that

     "this Court finds that there is strong evidence of fraud upon the court perpetrated by Petitioner in both the proceedings before the High Court and this Court. This Court is further of the opinion that Petitioner, by proceeding as she has, is attempting to circumvent the decision of the Westchester County Surrogate's Court, and the decision of Judge Vonhof of the Palm Beach Court."

51.  Even after all the criticism that has been levelled at Pamela for taking this course, both by the Foundation and Judge Andrews, she still says that she believes that it was appropriate for her to have obtained the Chancery order and that there was no need to inform the Foundation either that she had applied for it or that it had been granted. Mr Gibbon submitted, and I agree, that I should not on a summary application infer that Pamela has acted dishonestly or with deliberate disregard of her duties. But if I do not draw that inference, what is left? The only alternative conclusion that I can draw from this is that Pamela does not understand her responsibilities, and is not willing to learn them. There is no prospect of Pamela's position being any better after a trial.

52.   It is also a striking fact that when Pamela came to domesticate the Chancery order in
      Florida and New York, she did so in courts which had had no previous experience of
      this long running and bitter dispute. More than that, when restraining orders had been
      made against her by the state courts she registered the Chancery order in the Federal
      Court. This does not encourage me to believe that she will abide by orders of the
      court.

53.   It is plain that there is intense hostility between Pamela and the Foundation. Pamela is
      partisan as between the Foundation on the one hand and Carvel-Florida on the other.
      So far as the Foundation is concerned, the hostility is, in my judgment, grounded on
      the way in which the trusts have been administered.

54.   Lord Blackburn cited as the guiding principle to the jurisdiction to remove trustees as
      being "the welfare of the beneficiaries". Mr Barlow submitted:

            "Pamela has wholly disregarded this principle. Her every act
            has been calculated to promote her own personal interests and
            to prejudice those of the Foundation. She is in a position of
            irreconcilable conflict with the principal beneficiary of Agnes'
            estate and her hostility to the Foundation renders it quite
            impossible for her to fulfil her fiduciary duties. Her position as
            personal representative is untenable. She should be removed."

55.   I agree. I will order Pamela to be removed as personal representative. The Foundation
      has proposed that Mr Guy Greenhous, a solicitor and partner in RadcliffesLeBrasseur,
      be appointed as personal representative (or judicial trustee). He has consented to act;
      and has been certified as fit to act. There is no objection to him personally. I will
      therefore accept the Foundation's proposal.

**Application to set aside**

56.   The second application is an application to set aside the Chancery order. It is made
      under CPR Part 40.9 which says:

            "A person who is not a party but who is directly affected by a
            judgment or order may apply to have the judgment or order set
            aside."

57.   The Foundation is, in my judgment, a person who is directly affected by the order
      because if it stands it will reduce the value of Agnes' residuary estate. It is therefore
      entitled to make the application. The rule gives the court a discretion whether or not to
      set aside the order. In my judgment I should exercise my discretion in favour of the
      Foundation and set aside the order because:

      i)     No notice of the proceedings or the order was given to the Foundation;

      ii)    There has been no decision on the merits of the claim;

      iii)   There is, to put it no higher, a prima facie case that Pamela is influential in the
             decision making of Carvel-Florida;

iv)   In any event the consent to the order was signed by Pamela's mother rather than a wholly disinterested third party; and

v)    There is nothing to suggest that Pamela disclosed her relationship with Carvel-Florida to the court before it made its order.

58.   I will therefore set aside the order. I will hear argument about what directions (if any) I should give for the future conduct of that action when this judgment is handed down.

# EXHIBIT 4

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In the Matter of the Final Accounting of     :
Leonard M. Ross, as Ancillary Administrator c.t.a.   :
of the Estate of AGNES CARVEL,         :
                                     :
                  Deceased.     :
                                     :

-------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC. #:
DATE FILED: **5/4/07**

07 Civ. 3504 (RMB)

**ORDER**

### I.   Background

On or about May 2, 2007, Pamela Carvel, presumably a "personal representative of the

estate of Agnes Carvel in London, England," filed a Notice of Removal of "that portion of [the

Westchester County Surrogate's Court] action . . . to determine the foreign debts of the international

[e]state in a proceeding transferred from Westchester County Supreme Court . . . and that portion

[of the case seeking] 'criminal sanctions' against [Pamela Carvel] for asserting her Constitutional

rights." (Notice of Removal at 1.) Ms. Carvel states that "trial . . . is scheduled to begin [in

Surrogate's Court] on May 7, 2007 (after one year of adjournments . . . )." (Notice of Removal ¶ 7

(emphasis added).)

### II.   Legal Standard

"The notice of removal of a civil action or proceeding shall be filed within thirty days after

the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief

upon which such action or proceeding is based . . . ." 28 U.S.C. § 1446(b); see also In re

Application of Rosenkranz, No. 01 Civ. 635, 2001 WL 406250, at *3 (S.D.N.Y. Apr. 19, 2001).

### III.   Analysis

Assuming arguendo that Ms. Carvel has standing to remove, because Ms. Carvel failed to

remove the action in a timely manner, this Court declines jurisdiction. See Machat v. Sklar, No. 96

Civ. 3796, 1997 WL 599384, at *5 (Sept. 29, 1997). That is, the Notice of Removal, by Ms.

Carvel's admission, comes at least eleven months after the deadline for removal. "[A] federal court may sua sponte remand a case to the appropriate state court." New York v. Stoddard, No. 06 Civ. 1320, 2006 WL 3423863, at *1 n.3 (N.D.N.Y. Nov. 28, 2006).

It should also be noted that Ms. Carvel unsuccessfully sought to remove (apparently related) litigation from the Westchester County Surrogate's Court to this Court in September 1998. See In re Application of the Thomas & Agnes Carvel Found., 36 F. Supp. 2d 144, 148, 151 (S.D.N.Y. 1999), aff'd sub nom. Carvel v. Thomas & Agnes Carvel Found., 188 F.3d 83 (2d Cir. 1999).

### IV.    Conclusion and Order

For the reasons set forth above, the Clerk of the Court is respectfully requested to take the steps necessary to remand this action to Westchester County Surrogate's Court from which it was removed.

Dated: New York, New York
        May 4, 2007



Richard M. Berman, U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/4/07

2

# EXHIBIT 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PAMELA CARVEL, as Executor of                          :
the Estate of Agnes Carvel, *pro se*                   :
                                                       :
                                          Plaintiff,   :   **MEMORANDUM & ORDER**
                                                       :   **06-MC-0005 (DLI)**
                      -against-                         :
                                                       :
CARVEL FOUNDATION INC.                                  :
                                                       :
                                          Defendant.   :
-------------------------------------------------------------------X

**DORA L. IRIZARRY, U.S. District Judge:**

On January 20, 2006, *pro se* plaintiff Pamela Carvel, as Executor of the Estate of Agnes

Carvel, moved to confirm a foreign country money judgment against the Estate of Agnes Carvel.

The Thomas and Agnes Carvel Foundation (the "T&A Foundation") and Leonard M. Ross ("Ross"),

the Ancillary Administrator c.t.a. of the Estate of Agnes Carvel, (collectively the "Intervenors")

oppose plaintiff's motion and cross-move to dismiss this proceeding. On February 10, 2006, the

court ordered the plaintiff to show cause as to why (1) the T&A Foundation and Ross should not be

granted leave to intervene and (2) this matter should not be dismissed for lack of subject matter

jurisdiction. Based on a hearing held on March 9, 2006 and for the following reasons, this matter

is dismissed for lack of subject matter jurisdiction.

*Pro se* plaintiff, as executrix of the estate of Agnes Carvel, seeks to confirm a judgment by

the High Court of Justice London, England (the "High Court"), ordering "that the sum of

£8,085,095.51 be paid from the estate of the late Agnes Carvel" to the plaintiff (the "Foreign

Judgment"). Plaintiff further moves "against the assets primarily located in New York belonging

to the debtor, the Estate of Agnes Carvel, towards satisfaction of the final judgment of the High

Uo

Court . . . "[1]  (Pl's Mot. at ¶ 2 )  In their opposition and cross-motion, the Intervenors argue that (1) plaintiff failed to allege a sufficient basis for diversity jurisdiction in her complaint; (2) the Court lacks subject matter jurisdiction over this action; and (3) plaintiff lacks standing to bring such an action.

In the instant case, diversity is the alleged basis for subject matter jurisdiction.[2]  Diversity jurisdiction requires that the amount in controversy exceed $75,000 and the parties be completely diverse. 28 U.S.C. § 1332. Here, the Foreign Judgment exceeds the $75,000 amount in controversy required for diversity. Although the allegations concerning citizenship of both plaintiff and defendant are limited and vague, plaintiff asserts that she is the executrix of the Estate of Agnes Carvel, and thus a citizen of London, England. The defendant is a Florida not-for-profit corporation, and thus a Florida citizen for jurisdictional purposes. The court will assume that there is diversity jurisdiction for purposes of deciding this motion. However, irrespective of such an assumption and for the reasons set forth below, this court lack subject matter jurisdiction.

Pursuant to the probate exception to federal diversity jurisdiction, a federal court has no jurisdiction to probate a will or administer an estate even where diversity requirements are met. *See Markham v. Allen*, 326 U.S. 490, 494, 66 S. Ct. 296, 298, 90 L. Ed. 256, 259 (1946); *Dulce v. Dulce*,

---

[1]     Although plaintiff brings this action against the Carvel Foundation, a Florida not-for-profit corporation, plaintiff's papers seek to enforce the Foreign Judgment against the New York Estate of Agnes Carvel. (*See* Pl's Mot. at ¶¶ 2, 6).

[2]     Plaintiff failed to assert a specific basis for subject matter jurisdiction in her initial filing, but alleged diversity of citizenship as a the basis for subject matter jurisdiction in her affirmation in response to the court's order to show cause. (Pl's Aff'm at ¶ 11.) Because plaintiff is a *pro se* litigant, the court has construed plaintiff's papers broadly, interpreting them to raise the strongest arguments suggested. *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002).

2

233 F.3d 143, 145 (2d Cir. 2000). Although federal courts sitting in equity have jurisdiction to entertain suits of creditors, legatees and heirs and other claimants against a decedent's estate," *Markham*, 326 U.S. at 494, 66 S. Ct. at 298, 90 L. Ed. at 259, they "may not exercise jurisdiction to adjudicate rights in such property where the final judgment" will "interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." *Id.*

A two-prong inquiry is necessary to determine whether the probate exception to federal diversity jurisdiction is implicated in a particular lawsuit. *Moser v. Pollin*, 294 F.23d 335, 340 (2d Cir. 2002). The first question is whether "the federal district court sitting in diversity [is] being asked to directly probate a will or administer an estate." *Id.* The second is "whether entertaining the action would cause the federal district court to interfere with the probate proceedings or assume general jurisdiction of the probate or control of property in the custody of the state court." *Id.* (internal quotations omitted). "An affirmative answer to either prong requires [] the case be dismissed for lack of subject matter jurisdiction." *Id.*

Here, while the first prong is not satisfied, the second prong is. The plaintiff seeks to domesticate and enforce the Foreign Judgment against the New York Estate of Agnes Carvel – not probate or administer the Estate of Agnes Carvel. (*See* Pl's Mot. at ¶¶ 2, 6). However, the exercise of jurisdiction would inevitably and impermissibly interfere with on-going probate proceedings concerning the Estate of Agnes Carvel. The instant dispute involves whether the Foreign Judgment should be domesticated and have full force and effect in the United States. Not only has this issue has been addressed, either directly or indirectly, by the Florida Circuit Court; the New York State Supreme Court, Nassau County; and the Westchester County Surrogate's Court (the "Surrogate's

3

Court"), the Surrogate's Court has made various custodial and administrative determinations concerning the Estate of Agnes Carvel. Indeed, a trial on issues significantly affecting the New York Estate of Agnes Carvel is scheduled for May 2006 in the Surrogate's Court.

Since the death of Thomas Carvel ("Thomas"), the soft ice cream tycoon, in October 1990, various parties interested in his estate – including plaintiff, the T&A Foundation, and until her death in 1998, his widow Agnes Carvel ("Agnes") – have engaged in extensive, contentious litigation before the Surrogate's Court and elsewhere. In April 2002, the Surrogate's Court ruled that the T&A Foundation was the sole residual beneficiary of the Estate of Agnes Carvel. *In the Matter of the Application of the Thomas and Agnes Carvel Found.*, 8 Misc. 3d 1025 (Sur. Ct. Westchester Cty. 2002); *see also In re: Recognition of Foreign Judgment Pamela Carvel v. Estate of Agnes Carvel*, No. 05-5762, (Fla. Cir. Ct. Jan. 31, 2006). The Surrogate's Court further found that a 1995 will executed by Agnes Carvel which named Defendant, the Carvel Foundation, Inc.,[3] the sole beneficiary of the estate, violated a reciprocal will agreement executed by Agnes and Thomas Carvel in 1988. *Id.*

On or about July 24, 2003, the High Court ordered the Carvel Foundation to represent the Estate. In January 2004, the High Court issued the Foreign Judgment requiring defendant Carvel Foundation to pay plaintiff £8,085,095.51. (Pl's Mot. at Ex. C.) On or about April 14, 2005, the plaintiff filed an action in a Florida Circuit Court attempting to domesticate the Foreign Judgment. *In re: Recognition of Foreign Judgment Pamela Carvel v. Estate of Agnes Carvel*, No. 05-5762. Initially, the Florida Circuit Court entered an Order and Final Judgment domesticating the Foreign Judgment. However, on or about January 31, 2006, the Florida Circuit Court vacated its order

---

[3]     A Florida not-for-profit corporation incorporated on or about July 7, 1995.

4

concluding that "there was strong evidence of a fraud upon the court perpetrated by [Pamela Carvel] in both the proceedings before the High Court and this Court." *In re Recognition of Foreign Judgment Pamela Carvel v. Estate of Agnes Carvel*, No. 05-5762. Specifically, the High Court was unaware of plaintiff's status as a director of the Carvel Foundation, Inc., and that the Surrogate's Court found the T&A Foundation to be the sole residual beneficiary of the Estate. The T&A Foundation, an interested party, was not given notice of both the High Court and Florida proceedings. Furthermore, the Florida Circuit Court found that Pamela Carvel did not make an argument that the decisions rendered by the Surrogate's Court was obtained by fraud. *Id.*

Here, plaintiff is attempting to commit the same fraud upon this court. Plaintiff failed to provide notice to the interested intervening parties of this motion to confirm the same Foreign Judgment submitted to the Florida Circuit Court. Plaintiff also failed to notify the court of her prior attempts to domesticate and enforce the Foreign Judgment. Moreover, plaintiff failed to reveal that she has pursued similar or identical remedies in the New York Supreme Court, Nassau County, and a Florida Court. Plaintiff also failed to make any argument that any decision by the Surrogate's Court concerning the Estate of Agnes Carvel was obtained by fraud.

Furthermore, as a result of plaintiff's numerous attempts to penetrate the New York Estate of Agnes Carvel through various state and federal courts and circumvent the Surrogate's Court's rulings, the Surrogate's Court issued a Temporary Restraining Order, which is still in effect, prohibiting plaintiff from:

> (1) taking any action in another court pertaining to or affecting the assets and property of the Estate [of Agnes Carvel], subject to the jurisdiction of this Court, including all assets and property of said Estate that are located in the State of New York, (b) taking any action to enforce the purported Judgment obtained by Pamela Carvel with regard to assets and property of the Estate [of Agnes Carvel], or (c)

5

> taking any action which interferes with Ross' possession, custody and
> control of the funds, assets or property of the Estate recovered by him
> or over which he has custody or control for the benefit of the Estate
> and/or (d) from representing to any entity that she has legal authority
> to act on behalf of the Estate in the State of New York.

The New York State Supreme Court, Nassau County issued a similar TRO "stay[ing Pamela Carvel]

from proceeding to enforce or take any action with respect to any judgment with regard to or

pertaining to the assets or property of the Estate [of Agnes Carvel], or taking any other action or

proceedings to seize or interfere with the assets of the Estate [of Agnes Carvel]. ..." and transferred

the matter to the Surrogate's Court. Not only are there two restraining orders prohibiting plaintiff

from bringing such an action, plaintiff failed to disclose such orders to the court.

Litigation concerning the Estate of Agnes Carvel has been on-going for nearly sixteen years

before the Surrogate's Court. To date, the Surrogate's Court has (1) appointed Intervenor Leonard

Ross as Ancillary Administrator c.t.a. of the New York Estate of Agnes Carvel; (2) exercised

custody and control over the New York Estate of Agnes Carvel; (3) found the T&A Foundation to

be the sole beneficiary of the residual Estate of Agnes Carvel; (4) held that a 1995 will executed by

Agnes Carvel which named the Carvel Foundation, Inc. the sole beneficiary of the Estate violated

a reciprocal will agreement executed by Agnes and Thomas Carvel; (5) issued restraining orders

prohibiting plaintiff from seeking the exact relief she seeks before this court; and (6) issued other

decisions affecting the distribution and administration of the Estate of Agnes Carvel. Additionally,

a trial that may potentially resolve all issues concerning the New York Estate of Agnes Carvel is

currently scheduled for May 2006 before the Surrogate's Court. Thus, any exercise of jurisdiction

by this court would inevitably and impermissibly interfere with the Surrogate Court's "probate

proceedings," and custody and control over Agnes' New York Estate. *See Fay v. Fitzgerald*, 478

6

F.2d 181, 184 (2d Cir. 1973) (affirming dismissal of declaratory judgment action seeking declaration that common law wife of deceased is entitled to full state on grounds that state court would rule on such issues). Therefore, the probate exception applies and this matter is dismissed for lack of subject matter jurisdiction.

For the above reasons, the Intervenors' motion to dismiss is granted, and this case is accordingly dismissed in its entirety. The Clerk of Court is directed to close this case.

SO ORDERED.

DATED:    Brooklyn, New York
         March 29, 2006


                                        /s/
                              _____
                              DORA L. IRIZARRY
                              United States District Judge

7