IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                       :

AGNES CARVEL ESTATE, London England by    :
PAMELA CARVEL, Delaware Ancillary          :
Administrator PAMELA CARVEL, Fiduciary-    :  Case No. 07-cv-00238-JJF
Creditor, on behalf of herself and others similarly  :
situated,                             :

              Plaintiff,         :

             -against-        :

LEONARD ROSS and               :
JOHN/JANE DOE 1-20            :
DOE CO. 1-20                  :

             Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## OPENING BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE
## AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

David J. Margules (#2254)
Sean M. Brennecke (#4686)
BOUCHARD MARGULES & FRIEDLANDER, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
(302) 573-3500
dmargules@bmf-law.com
sbrennecke@bmf-law.com
Attorneys for Defendant Leonard Ross

OF COUNSEL:

Eve Rachel Markewich, Esquire
Markewich & Rosenstock LLP
8 East 41st Street, 5th Floor
New York, NY 10017
(212) 542-3156

DATED: November 26, 2007

## **TABLE OF CONTENTS**

**PAGE**

Preliminary Statement..................................................................................................1

Nature and Stage of Proceedings .................................................................................1

Summary of Argument ..................................................................................................1

Background and Statement of Facts ..............................................................................1

Jurisdictional Facts.......................................................................................................4

Argument ......................................................................................................................5

Dismissal Pursuant to Federal Rule of Civil Procedure § 12(b)(2) ...................................5

Delaware's Long Arm Statute ......................................................................................6

Constitutional Requirement ..........................................................................................9

Conclusion ..................................................................................................................10

# TABLE OF AUTHORITIES

**CASE**                                                                          **PAGE**

*Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.*,
   295 F. Supp. 2d 400 (D. Del. 2002)................................................................................8

*Blue Ball Properties v. Cherry Island Farm, Ltd.*,
   658 F.Supp. 1310 (D. Del 1987)....................................................................................5

*The Thomas and Agnes Carvel Foundation v. Pamela Carvel*,
   C.A. No. 3185-VCP .......................................................................................................2

*In re Carvel*,
   769 N.Y.S. 2d 403 (2d Dept. 2003) ...............................................................................1

*In re Carvel*,
   769 N.Y.S. 2d 402 (2d Dept. 2003) ...............................................................................1

*In re Carvel*,
   808 N.Y.S. 2d 100 (2d Dept. 2005) ...............................................................................1

*Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*,
   673 F.2d 700 (3d. Cir. 1982)..........................................................................................6

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945).......................................................................................................10

*LaBounty v. Adler*,
   933 F.2d 121 (2d Cir. 1991)............................................................................................6

*M & L of Delaware v. Wallace*,
   2004 WL 2370708 (D. Del. 2004)...................................................................................7

*M&M Technologies, Inc. v. Gurtler Chemicals, Inc.*
   2005 WL 293509 (D. Del 2005)................................................................................9, 10

*Physician Endorsed, LLC v. Clark*,
   374 F. Supp.2d 395 (D. Del. 2005)..............................................................................5, 9

*Reach & Assocs., P.C. v. Dencer*,
   269 F.Supp. 2d 497 (D.Del. 2003)..................................................................................5

*Stranahan Gear Co. v. NL Industries, Inc.*,
   800 F.2d 53 (3d Cir. 1986)..............................................................................................6

*Werner v. Miller Tech. Mgmt.*,
  831 A.2d 318 (Del Ch. 2003)......................................................................................9, 10


## **OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(2) ............................................................................................1, 6, 10

10 *Del. C.* § 3104(C)..................................................................................................5, 6, 7

## Preliminary Statement

Defendant Leonard M. Ross ("Ross"), a stranger to the State of Delaware, submits this memorandum of law in support of his motion to dismiss the amended complaint on the grounds of lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## Nature and Stage of Proceeding

The complaint was filed on May 2, 2007; an amended complaint was filed on August 27, 2007. Ross was served on November 6, 2007. There has been no discovery.

## Summary of the Argument

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the case should be dismissed for lack of personal jurisdiction over the defendant. Ross, a citizen of the State of New York, has no contacts with the State of Delaware, and allegations in the amended complaint satisfy neither the requisites of the Delaware long arm statute, nor the bounds of Constitutional due process.

## Background and Facts

This case purports to address issues relating to the Estates of Thomas ("Tom") and Agnes Carvel, neither of whom was a citizen or resident of the State of Delaware. Tom Carvel's will was admitted to probate in the State of New York, and since 1990 the Tom Carvel Estate has been heavily litigated in the New York State courts. (*See e.g. In re Carvel*, 808 N.Y.S. 2d 100 (2d Dept. 2005); *In re Carvel*, 769 N.Y.S. 2d 403 (2d Dept. 2003); *In re Carvel*, 769 N.Y.S. 2d 402 (2d Dept. 2003). Agnes Carvel's will was admitted to probate in the United Kingdom in 1998. Am. Compl. ¶ 24. Her estate, also, has been the subject of continuous litigation in the State of New York, including a current proceeding relating to the Accounting of Leonard M. Ross, as N.Y. Ancillary

Administrator of the Estate of Agnes Carvel. *See cases cited above, and generally Estate of Agnes Carvel, Westchester Surrogate's Court Index No. 2165/1998.*

Pamela Carvel, identified as plaintiff in one or more capacities, was suspended as Executor of the Estate of Tom Carvel, and subsequently resigned, in the face of being permanently removed by the New York Court. *Markewich Aff. Exs.* 1, 2. Subsequently, Pamela Carvel also was removed as Executor of the Estate of Agnes Carvel, and replaced with a Judicial Trustee. Am. Compl. ¶ 24; *Markewich Aff. Ex.* 3. This Court has been notified by the Judicial Trustee of the Estate of Agnes Carvel that Pamela Carvel has no authority to act on behalf of the Estate of Agnes Carvel. *Agnes Carvel Estate London England v. Ross*, No. 8 Civ. 07-cv-00238-JJF. In a separate proceeding in this Court, efforts are underway to remove Pamela Carvel as Delaware Ancillary Administrator. *The Thomas and Agnes Carvel Foundation v. Pamela Carvel*, C.A. No. 3185-VCP.

This case appears to be brought by Pamela Carvel to redress all perceived wrongs she can catalogue relating to the Estates of Tom and Agnes Carvel since 1990. As set forth in the amended complaint, each of the matters of which Pamela Carvel has been addressed previously by other courts, principally the appropriate Surrogate's Court in Westchester County, New York.

Moreover, this case is not the first that Pamela Carvel has brought to interfere with the proper administration of the Estate of Agnes Carvel. Pamela Carvel is a professional litigant. Contrary to her suggestion that she is unschooled in court procedure, Pamela Carvel has brought several cases in several jurisdictions – each one without a lawyer. In the United Kingdom, Pamela Carvel commenced an action against the Estate of Agnes Carvel and fraudulently obtained a judgment for over 8 million

pounds – nearly $15,000,000. She then took that judgment and domesticated it, first, in Florida, and then in New York, where, *ex parte*, she commenced a proceeding to enforce the fraudulent judgment and attempted to abscond with the funds in the custody of Ross, the Ancillary Administrator. When Carvel's attempts in the New York state courts failed, she then moved the Federal jurisdiction, and commenced an action in the United States District Court for the Southern District of New York. *Pamela Carvel, as Executor of the Estate of Agnes Carvel, pro se v. Carvel Foundation Inc.*, Case No. 06-MC-0005 (DLI) (the "U.S. EDNY Case"). *See Markewich Aff., Exs. 3 and 4*.

The history of Carvel's attempts to improperly take control of the Estate funds is well-documented in Judge Irizarry's decision in the U.S. EDNY Case, in which Ross successfully intervened, and obtained a dismissal. *See Markewich Aff., Ex.4*, pages 4 through 7, including Judge Irizarry's conclusion that Carvel was "attempting to commit the same fraud" upon the U.S. EDNY Court as she had upon various other courts in which she tried improperly and without process to take control of Estate funds. *Id. @ 5*. Carvel appealed Judge Irrizarry's decision to the Second Circuit, which affirmed the district court. 230 Fed. Appx. 103 (2d Cir. 2007). Recently, Carvel has petitioned for certiorari to the United States Supreme Court.

In the meantime, Carvel attempted to remove the entire Westchester Surrogate's Court proceeding to the Federal Court in the Southern District of New York. The District Court, *sua sponte*, remanded the matter. *See Markewich Aff. Ex. 5*. Following that rebuff, Carvel commenced, in quick succession, two cases in this Court –the instant matter, and an action against four members and directors of the Thomas and Agnes Carvel Foundation. *See Pamela Carvel, as Citizen, as Delaware Ancillary Administrator*

*for Agnes Carvel Estate, as Member for Thomas and Agnes Carvel Foundation, v. William Griffin, Marie Abplanalp, Salvatore Molella, Robert Davis and John/Jane Doe 1-20 Doe Corp. 1-20,* Case No. 07-CV-00273.

### Jurisdictional Facts

Leonard Ross, the named defendant herein is the duly appointed and qualified New York Ancillary Administrator of the Estate of Agnes Carvel. He has no authority to act in Delaware, and has engaged in no acts in this State. The fact that this Court is one of broad general jurisdiction does not mean it is a catch-all for any case Pamela Carvel seeks to burden it with. Most significantly, the Court's broad jurisdiction does not extend to persons who have no relationship with the State of Delaware, and who have engaged in no acts within its borders.

Ross has submitted an affidavit herewith establishing that he has no contacts with the State of Delaware. He is not a resident of Delaware. He is not licensed to practice his profession in Delaware. He conducts no business in Delaware and never has conducted business in Delaware. He has not contracted to supply services or things in Delaware. He has not committed any tortious acts in the State of Delaware, nor is he even alleged to have done so. He does not have an interest in real property in the State, and he has not contracted to act as a surety.

There are no facts to support Delaware long-arm jurisdiction over Ross. Moreover, the amended complaint, read most favorably to plaintiff, does not adequately allege such facts. The amended complaint asserts, in paragraph 4, that Ross "represented Agnes Carvel and the Estate concerning Delaware corporations, Delaware assets and Delaware claims." (See also Am. Compl. ¶ 19). Even if the allegations are true, which they are not, such allegations are not sufficient to confer long-arm jurisdiction over Ross.

There are no allegations that such representation took place in the State of Delaware, and there are no allegations that Ross conducted business in the State of Delaware.

The specific facts of wrongdoing alleged against Ross consist of allegations that Ross, as New York Ancillary Administrator, "refused" to act in Florida and New York (Am. Compl., ¶¶ 39,40, 45, 47,50-53, 56, 57). This Delaware Court can not take jurisdiction over Ross to address those alleged acts or omissions.

### Argument

The amended complaint should be dismissed because this Court lacks personal jurisdiction over the defendant Leonard Ross.

### Dismissal Pursuant to Federal Rule of Civil Procedure §12(b)(2)

In order for plaintiff to establish personal jurisdiction over defendant Leonard Ross, a non-resident of Delaware, plaintiff must allege facts sufficient to satisfy two requirements, one statutory and one constitutional. *See Physician Endorsed, LLC v. Clark*, 374 F. Supp.2d 395, 397 (D. Del. 2005) (citing *Reach & Assocs., P.C. v. Dencer*, 269 F.Supp. 2d 497, 502 (D.Del. 2003)). The statutory requirement refers to the state's long arm statute, 10 *Del. C.* § 3104; the constitutional requirement triggers the Court's inquiry as to whether, "the exercise of jurisdiction comports with the defendant's right to due process." *See Physician Endorsed, LLC* 374 F. Supp 2d at 397.

Only after determining that alleged conduct falls within one of the provisions of the long arm statute should a Court proceed to consider the constitutional requirement. *Blue Ball Properties v. Cherry Island Farm, Ltd.*, 658 F.Supp. 1310 (D. Del 1987).

Once a jurisdictional defense has been raised, the plaintiff has the burden of establishing with reasonable particularity that sufficient minimum contacts exist between the defendant and the forum state. *See Physician Endorsed, LLC* 374 F. Supp. 2d at 397.

Moreover, the plaintiff must sustain its burden of proof "through sworn affidavits or other competent evidence." *Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700 (3d. Cir. 1982)). *See also Stranahan Gear Co. v. NL Industries, Inc.*, 800 F.2d 53, 58 (3d Cir. 1986) (plaintiff must show sufficient evidence to withstand a Rule 12(b)(2) motion, bare pleadings and allegations are not enough).

Although plaintiff's *pro se* status may raise the possibility of this Court giving broad deference to the *form* of her pleadings, the *substance* of plaintiff's pleadings should not be overlooked. *See generally LaBounty v. Adler*, 933 F.2d 121 (2d Cir. 1991) (the Court recognized that although they "are obliged to construe their pleadings and papers liberally…hardly a week goes by that we do not dismiss a number of appeals brought by *pro se* litigants because the underlying suits are 'frivolous or malicious.'")

## **Delaware's Long Arm Statute**

Section 3104 of title 10 of the Delaware Code, Personal Jurisdiction by Acts of Nonresidents, provides, in relevant part:

(c)     As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

(1)     Transacts any business or performs any character of work or service in the State;

(2)     Contracts to supply services or things in this State;

(3)     Causes tortious injury in the State by an act or omission in this State;

(4)     Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5)     Has an interest in, uses or possesses real property in the State; or

(6)    Contracts to insure or act as surety for or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time when the contract is made, unless the parties otherwise provide in writing.

10 *Del. C.* § 3104(c) (2007).

The defendant, Leonard Ross, is a practicing attorney in New York State. He resides in New York State. He does not live in Delaware, work in Delaware, or regularly do or solicit business in Delaware. He does not derive substantial revenue from services or things used or consumed in Delaware or engage in any sort of persistent course of conduct in Delaware. (*See Affidavit of Leonard Ross*, ¶¶ 3, 6 and 7). Moreover, the amended complaint does not even allege Ross has such contacts with the State.

In fact, the only Delaware conduct in which plaintiff alleges defendant participated appears to be an election not to pursue certain claims of the plaintiff's in New York regarding Delaware assets. *See Am. Compl.*, ¶ 4 ("[Leonard] Ross harmed Plaintiffs by failing and refusing to assert Delaware claims in New York, and by actively and aggressively obstructing Pamela Carvel's ability to assert claims in New York.").

Plaintiff's allegations fail to satisfy any of the sections of Delaware's long arm statute.

(1)    Transacts any business or performs any character of work or service in the State;

The state courts in Delaware interpret the "transacting business" provision of the long arm statute as a specific jurisdiction provision that requires a nexus between the cause of action and the conduct used as a basis for jurisdiction. *M & L of Delaware v. Wallace*, 2004 WL 2370708 (D. Del. 2004) (attached hereto as Exhibit A). The amended complaint is devoid of any allegations that the defendant Leonard Ross transacted any business within the state of Delaware. Indeed, the overture of plaintiff's amended

complaint is that the defendant *did not* transact business in Delaware when plaintiff wanted him to. (*Am. Compl.*, ¶ 4).

    (2)    Contracts to supply services or things in this State;

Plaintiff alleges no such conduct by the defendant Leonard Ross.

    (3)    Causes tortious injury in the States by an act or omission in this State;

Plaintiff never alleges that the defendant Leonard Ross was present in the state when the alleged acts or omission were committed or omitted.

    (4)    Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engaged is any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

This section of the long arm statute is commonly interpreted as a general jurisdiction provision. *See Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 405 (D. Del. 2002). This provision confers jurisdiction based on a persistent course of conduct within the state; however plaintiff makes no allegation that Ross is engaged in any business or other conduct within the state, as required by the statute.

The defendant Leonard Ross does not regularly do or solicit business or engage in any sort of persistent course of conduct within the state: He has not appointed an agent for service of process within the state, is not licensed to practice law in the state, has no local listing, bank account, real estate or employee, has not paid any taxes in Delaware, does not derive substantial revenue from things used or consumed within Delaware, has never commenced any legal action or proceeding in Delaware, and, save this proceeding, has never been named as a defendant in a Delaware proceeding. (*See Affidavit of Leonard Ross*, ¶¶ 3, 6 and 7).

The Courts require that plaintiffs allege that defendants engage in this "high standard" of a persistent course of conduct in the state to fall within the ambit of this provision. *See Physician Endorsed, LLC* 374 F. Supp. 2d at 398. This defendant's contacts do not even approach the level of the "high level" of persistent conduct required for this provision. *See, generally, M&M Technologies, Inc. v. Gurtler Chemicals, Inc.* 2005 WL 293509 (D. Del 2005) (attached hereto as Exhibit B).

    (5)    Has an interest in, uses or possesses real property in the State;

This section is likewise inapplicable as Mr. Ross uses or possesses no such property and there is no allegation that he does so. (*See Affidavit of Leonard Ross*, ¶7).

    (6)    Contracts to insure or act as surety for or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

This provision is similarly inapplicable as it is not alleged that Mr. Ross has entered into any such contract, obligation or agreement.

### Constitutional Requirement

Even if the allegations set forth within the amended complaint satisfied the requirements of Delaware's long-arm statute, which they do not, the defendant did not have the requisite contacts within Delaware for this Court to exercise personal jurisdiction that would comport with due process.

"Due process in the exercise of personal jurisdiction requires a 'minimum contacts' analysis, which seeks to determine the fairness of subjecting a nonresident defendant to suit in a distant forum by considering all of the connections among the defendant, the forum and the litigation." *Werner v. Miller Tech. Mgmt.*, 831 A.2d 318, 330 (Del Ch. 2003). Indeed, "Federal due process precludes the exercise of jurisdiction where the defendant does not have minimum contacts with the forum, so that exercise of

jurisdiction would "violate traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

> As Judge Sleet emphasized in *M&M Technologies*,

> "[i]n order to give non-residents 'fair warning' that a particular activity may subject them to litigation within the forum, these 'minimum contacts' must be purposeful...[i]n other words, the defendant's contact must be of the nature that would cause it to reasonably foresee that it might be 'haled before a court' in the forum as a result of the conduct."

*See M&M Technologies, Inc. v. Gurtler Chemicals, Inc.* 2005 WL 293509 (D. Del 2005).

Ross has no contact with the State of Delaware consistent with due process. Thus, even if specific aspects of the Delaware Long Arm statute were met – which they are not – the constitutional bounds of due process are not reached, and jurisdiction may not be taken. Given the plaintiff's baseless allegations and the defendant's non-existent contacts with the state of Delaware, it would be unfair and unjust to hold Leonard Ross answerable to a Delaware Federal Court for alleged actions he elected not to pursue while in New York.

### Conclusion

Neither the long arm statute nor due process is satisfied by the allegations set forth by defendant and the Court should dismiss this action for lack of personal jurisdiction pursuant to the Federal Rules of Civil Procedure § 12(b)(2).

/s/ David J. Margules
David J. Margules (#2254)
Sean M. Brennecke (#4686)
BOUCHARD MARGULES & FRIEDLANDER, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
(302) 573-3500
dmargules@bmf-law.com
sbrennecke@bmf-law.com
Attorneys for Defendant Leonard Ross

OF COUNSEL:

Eve Rachel Markewich, Esquire
Markewich & Rosenstock LLP
8 East 41st Street, 5th Floor
New York, NY 10017
(212) 542-3156

DATED:  November 26, 2007

## CERTIFICATE OF SERVICE

I, Sean M. Brennecke, hereby certify that on November 26, 2007, I caused to be

electronically filed a true and correct copy of the **Opening Brief in Support of**

**Defendant's Motion to Dismiss the Amended Complaint for Lack of Personal**

**Jurisdiction** with the Clerk of Court by CM/ECF.

I further certify that I served a true and correct copy of the foregoing document on

the plaintiff in the manner indicated below:

### By Federal Express

Ms. Pamela Carvel
23 Old Brompton Road
Suite 159
London SW7 3SS
England

/s/ Sean M. Brennecke
David J. Margules (#2254)
Sean M. Brennecke (#4686)
BOUCHARD MARGULES & FRIEDLANDER, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
(302) 573-3500
dmargules@bmf-law.com
sbrennecke@bmf-law.com
Attorneys for Defendant Leonard Ross

# EXHIBIT A

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2370708 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

**C**M & L of Delaware, Inc. v. Wallace
D.Del.,2004.
Only the Westlaw citation is currently
available.
United States District Court,D. Delaware.
M & L OF DELAWARE, INC., a Delaware
corporation, Plaintiff,
v.
Benjamin WALLACE and Joseph Malone,
DVM, Defendants.
**No. Civ.A.03-521-KAJ.**

Oct. 18, 2004.

<u>Adam L. Balick</u>, Balick & Balick,
Wilmington, DE, for Plaintiff.
<u>Adam Wyatt Poff</u>, Young, Conaway,
Stargatt & Taylor, <u>Robert J. Katzenstein</u>,
Smith, Katzenstein, & Furlow, Wilmington,
DE, for Defendants.

*MEMORANDUM ORDER*
<u>JORDAN</u>, J.

### I. INTRODUCTION

**\*1** M & L of Delaware, Inc., a Delaware
corporation ("M & L" or "Plaintiff") filed
suit against Benjamin Wallace ("Wallace")
and Joseph Malone, D.V.M. ("Malone")
alleging breach of contract, negligence, and
trespass to chattels in connection with the
castration of Plaintiff's horse known as "Mr.
Commander." Subject Matter Jurisdiction is
invoked under <u>28 U.S.C. § 1331</u>.

On October 2, 2003, Malone filed a motion
to dismiss M & L's complaint for lack of
personal jurisdiction. (Docket Item "D.I."
5.) On December 3, 2003, Wallace filed a
motion to dismiss M & L's complaint for
lack of personal jurisdiction and insufficient

service of process. For the reasons set forth
below, Malone's motion to dismiss is
granted and Wallace's motion to dismiss is
denied.

### II. BACKGROUND

Plaintiff is a corporation involved with the
breeding and racing of standardbred horses.
(D.I. 22, Ex. A at 1.) Wallace is a horse
trainer who has previously traveled to
Delaware to race horses and has sent here
horses he has trained. (D.I. 24 at 2.) Having
seen Wallace's horses in Delaware on one of
those occasions, representatives of the
Plaintiff contacted Wallace by telephone on
May 28, 2002 to discuss the possibility of
Wallace training Mr. Commander. (D.I. 22,
Ex A at 2.) Shortly thereafter, the parties
arranged to have Mr. Commander shipped to
Ontario, Canada for training with Wallace.
(*Id.*) After the horse arrived in Ontario,
Wallace decided that, in order to improve
the horse's performance, it should be
castrated. (D.I. 19, Ex. A at 2.) He then
called Malone, a veterinary doctor, and
engaged his services to castrate Mr.
Commander. (*Id.*) Malone performed the
surgery in Ontario on June 6, 2002. (*Id.*)
After learning of Mr. Commander's
castration M & L, had the horse transferred
to another trainer. (D.I. 22, Ex. A at 2.)

Wallace does not have a place of business in
Delaware, nor does he advertise in Delaware
or maintain a website. (D.I. 24 at 1, 5-6.)
From 1999 through 2002, horses trained by
Wallace raced in Delaware on six occasions.
(D.I.22, Ex. E.) Wallace personally attended
two races in 1999; he did not attend the
other above-mentioned races. (D.I. 24 at 2.)
Horses trained by Wallace have won

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

$62,397 in Delaware. (D.I.22, Ex. E.) From at least 1999 through 2002, Wallace had a license to train horses in Delaware and has been listed as the trainer of record for horses he has sent here. (D.I. 24, Ex. A; D.I. 22, Ex. F at 41; D.I. 22, Ex. E.) Delaware law prohibits trainers from taking part in races without first obtaining a permit. (D.I. 22, Ex. F at 41.)

While Malone has performed work for the Plaintiff and at one time was licensed as a Veterinarian in Delaware, that license lapsed in 2000, and, at the time he performed the surgery at issue, he had no ties to Delaware. (D.I. 11 at 4-5; D.I. 6, Ex. 1.) Malone maintains a website that is accessible in Delaware. (D.I. 11, Ex D.) With respect to the surgery, Malone had no contact with the Plaintiff or anyone else in Delaware.

**\*2** On May 30, 2003, Plaintiff filed a complaint against Wallace and Malone to recover damages it allegedly suffered as a result of Mr. Commander's castration. (D.I.1.) In August of that year, Plaintiff attempted to serve Wallace in Ontario, however, this attempt did not satisfy the requirements for service under the Hague Convention for service in Canada. *See infra* at 7. Plaintiff maintains that it is now in the process of serving Wallace under the Hague Convention. (D.I. 22 at 9-20.)

### III. DISCUSSION

The plaintiff bears the burden of making a *prima facie* showing that the court has personal jurisdiction over the defendants. *Intel Corp. v. Broadcom Corp.,* 167 F.Supp.2d 692, 699 (D.Del.2001). When personal jurisdiction is contested without the benefit of discovery, the plaintiff need only establish a *prima facie* case, with the record viewed in the light most favorable to the plaintiff. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc. et al.,* 1999 U.S. Dist. LEXIS 12455 at \*5-6 (D.Del. Aug. 3, 1999); *Siemens Aktiengesellschaft v. LG Semicon Co., Ltd.,* 69 F.Supp.2d 622, 624 (D.Del.1999).

The determination of whether a defendant is subject to personal jurisdiction requires a two-part analysis. *Broadcom,* 167 F.Supp.2d at 700;*Siemens,* 69 F.Supp.2d at 624;*Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 293 (3d Cir.1985). First, the court must determine whether the language of the Delaware long-arm statute, 10 Del. C. § 3104(c), reaches the defendant. *Broadcom,* 167 F.Supp.2d at 700. Second, if the court finds that the defendant's conduct gives rise to personal jurisdiction under the long-arm statute, the court must then determine whether subjecting the defendant to jurisdiction in Delaware would comport with the Due Process Clause of the Fourteenth Amendment. *Id.* (citing *Intel Corp. v. Silicon Storage Tech., Inc.,* 20 F.Supp.2d 690, 694 (D.Del.1998)).

The Delaware long-arm statute has been construed "broadly ... to confer jurisdiction to the maximum extent possible under the due process clause."*LaNuova D & B S.P.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986). Nevertheless, the Court begins its analysis with the Delaware long-arm statute.

Pertinent portions of the Delaware long-arm statute provide:
(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

* * *

(1) Transacts any business or performs any character of work or service in the State;

10 Del. C. §§ 3104(c)(1), (c)(3) & (c)(4). Delaware state courts have interpreted the "transacting business" provision of § 3104(c)(1) as a specific jurisdiction provision that requires a nexus between the cause of action and the conduct used as a basis for jurisdiction. See LaNuova, 513 A.2d at 768.

Once it is determined that there is personal jurisdiction under the state long-arm statute, the court must look to ensure that the granting of specific personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. Broadcom, 167 F.Supp.2d at 700. The Third Circuit has held that foreseeability that the defendant's conduct would cause him to be hauled into court in the forum state is critical to the due process analysis. Id. In particular, a "defendant's deliberate attempt to enter, advertise and promote itself" can be sufficient to confer specific personal jurisdiction over defendant. United States Golf Asso. v. U.S. Amateur Golf Asso., 690 F.Supp. 317, 320 (D.N.J.1988) (holding that where a defendant has no connections to the state in question, a direct mail solicitation to the plaintiff was adequate to confer personal jurisdiction.) Even minimal marketing efforts have been held sufficient to confer personal jurisdiction. See Clay v. Hopperton Nursery, Inc., 533 F.Supp. 476, 478 (D.Ky.1982) (holding that where a defendant advertised in a trade journal that had 152 subscribers in the state in question, and the plaintiff only vaguely recalled seeing the ad, the exercise of personal jurisdiction was nevertheless appropriate.)

*3 Once it has been decided that a defendant purposefully established minimum contacts within the forum State, those contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (U.S.1985) (internal citations omitted). The Third Circuit has held that cases are "rare ... in which minimum requirements in the concept of fair play and substantial justice ... defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities."Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 207 (3d Cir.1998) (internal citations omitted).

A. Personal Jurisdiction of Wallace

Of note in this case, Wallace's horses took part in six races over a two and a half year period within Delaware. (D.I.22, Ex. E.) As the trainer of record for these races, Wallace was prominently listed as the trainer of the horses in the U.S. Trotting Association Literature. (D.I. 22, Ex C-E.) For the privilege of training horses that competed in Delaware, Wallace had to, and did, obtain a racing license in Delaware. (D.I. 24, Ex. A at 1.) As Wallace is a seasoned horse trainer it is reasonable to assume that he was aware that his name would be listed and accessible by people watching races in Delaware. Consequently, it was foreseeable that people involved in the horse racing industry would watch the races in Delaware and contact Wallace, based, at least partially, on the performance of the horses he trained. In fact, from watching Wallace's trained horses excel at such races, Plaintiff decided to contact him and contract for his services. (D.I. 22, Ex A.) Wallace's efforts in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2370708 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Delaware can properly be viewed as a kind of marketing, and because Wallace's actions in Delaware led Plaintiff to contract with him and the alleged injury resulted from that contract, the necessary nexus is present under Delaware's long-arm statute section 3104(c)(1).

Notions of fair play and substantial justice will not be offended by requiring Wallace to defend himself here. He has trained horses that have won a more than *de minimis* sum in Delaware (D.I.22, Ex. E), and as the trainer of record his compensation is derived from the horses winnings in Delaware. Additionally, as earlier noted, Wallace was listed as the trainer of the horses that raced here and acquired name recognition among race enthusiasts, including Plaintiff. Consequently, Wallace can fairly be haled into court in Delaware. I therefore hold that this court has personal jurisdiction over Wallace.

## B. *Personal Jurisdiction of Dr. Malone*

With respect to Dr. Malone, at the time of the incident there were absolutely no contacts between him and Delaware. The Plaintiff argues that Dr. Malone's professional relationship with Plaintiff, maintenance of his website, and his professional obligation to obtain informed consent before castrating Mr. Commander constitute the minimum contacts necessary to support a finding of personal jurisdiction over Dr. Malone. (D.I. 11 at 8-9.) None of these acts are fairly seen as having occurred in Delaware or having arisen from acts occurring in Delaware, and as such, none of them can be used to establish personal jurisdiction.[FN1]*See LaNuova,* 513 A.2d at 768. Therefore, I hold that the court lacks personal jurisdiction over Malone.

> FN1. The website is not alleged to be interactive or to otherwise be a vehicle for transacting business in Delaware. *See Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 454-55 (3d Cir.2003) (holding that the operator of a commercially interactive website, without specifically directing its selling towards the residents of the forum in question, is not subject to jurisdiction there.)

## C. *Wallace's Service of Process*

**\*4** Lastly, Wallace argues that he was not properly served under the Hague Convention and that the complaint against him should therefore be dismissed. (D.I. 19 at 12.) On October 21, 2003, a process server delivered the Summons, Complaint and Civil Coversheet to Wallace, who signed that he had received the documents. (D.I.22, Ex. J.) This service is insufficient under the Hague Convention.[FN2](D.I. 24 Ex. I.) Federal Rule of Civil Procedure 4(m), however, does not contain a time limit for serving foreign defendants. Additionally, Wallace is aware of this litigation, as he has submitted briefs to this court opposing personal jurisdiction. Therefore, I find that Wallace is not unduly harmed by allowing Plaintiff additional time to properly effect service of process.

> FN2. The Hague Convention requires that all documents be forwarded to Canada's central process server. *See*HAGUE CONVENTION ON SERVICE ABROAD OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS IN CIVIL AND COMMERCIAL

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2370708 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 5

> MATTERS, LEXIS 20 U.S.T. 361, 16-18 (1969). In this case the documents were not delivered through the central process server, and, consequently, service was not effective.

### IV. CONCLUSION

Therefore, it is hereby ORDERED that Defendant Benjamin Wallace's Motion to Dismiss (D.I.18) is DENIED, and Defendant Joseph Malone, D.V.M.'s Motion to Dismiss (D.I.5) is GRANTED.

D.Del.,2004.
M & L of Delaware, Inc. v. Wallace
Not Reported in F.Supp.2d, 2004 WL 2370708 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 293509 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

CM & M Technologies, Inc. v. Gurtler
Chemicals, Inc.
D.Del.,2005.
Only the Westlaw citation is currently
available.
United States District Court,D. Delaware.
M & M TECHNOLOGIES, INC., Plaintiff,

v.

GURTLER CHEMICALS, INC.,
Defendant/Third-Party Plaintiff,

v.

BURLINGTON CHEMICAL CO., INC.,
Third-Party Defendant.
**No. Civ.A. 03-994 GMS.**

Feb. 8, 2005.

George Pazuniak, Gerard M. O'Rourke,
Connolly, Bove, Lodge & Hutz,
Wilmington, DE, for Plaintiff and Counter-
Defendant.
William J. Wade, Steven J. Fineman,
Richards, Layton & Finger, Rex A.
Donnelly, IV, Ratner & Prestia,
Wilmington, DE, Kevin W. Goldstein,
Stradley Ronon Stevens & Young, LLP, for
Defendant, Third-Party Plaintiff and
Counter-Claimant.

*MEMORANDUM*

SLEET, J.

## I. INTRODUCTION

**\*1** On October 30, 2003, the plaintiff, M &
M Technologies, Inc. ("M & M"), filed this
patent infringement action against Gurtler
Chemicals, Inc. ("Gurtler"). Presently before
the court is a motion to dismiss for lack of
personal jurisdiction filed by third-party
defendant Burlington Chemical Company,
Inc. ("Burlington"). For the following

reasons, the court will grant the motion.

## II. BACKGROUND

The patent-in-suit, U.S. Patent No.
6,159,548 (the " '548 patent"), allegedly is
owned by M & M. The patented invention is
a method for oilproofing and waterproofing
previously manufactured fabric with an
aerosol spray containing a diluted
fluoroacrylate emulsion. The complaint
alleges that Gurtler has infringed, induced
infringement of, or contributorily infringed
the method claims of the '548 patent.

On July 12, 2004, Gurtler filed a motion to
file a second amended answer, counterclaim,
and third-party complaint. The court granted
Gurtler's motion on September 22, 2004.
Gurtler named Burlington as a third-party
defendant and brought claims against
Burlington for negligent misrepresentation
and violation of the Uniform Commercial
Code, Section 2-312, *i.e.* breach of warranty.
The third-party complaint alleges in Count I
that: (1) Gurtler makes its allegedly
infringing product merely by adding water
to Burcopel CAT, a product sold to it by
Burlington; (2) at the time Burlington began
selling Burcopel CAT to Gurtler, Burlington
orally represented and warranted that
Gurtler's use of the product would not
infringe, induce infringement of, or
contributorily infringe the '548 patent; and
(3) Burlington breached its warranty against
infringement. Count II alleges that: (1)
Burlington's representation that Burcopel
CAT was not infringing was a false
representation of fact; (2) Burlington made
the false representation because of its lack of
reasonable care in ascertaining the facts; (3)
Burlington made the false representation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

with an intention to induce Gurtler to act; (4) Gurtler justifiably relied on the false representation; and (5) Burlington's actions caused Gurtler to incur damages.

Burlington is a North Carolina corporation, with no place of business in Delaware. It neither owns nor leases any property in Delaware. Burlington is not registered with the Secretary of State to do business in Delaware. It maintains no office, local telephone listing, or bank accounts in Delaware, and similarly, has no employees in Delaware. It has not paid taxes or franchise fees in Delaware. Burlington has never commenced any legal action or proceeding in the State of Delaware and has never been named as defendant in any action in Delaware, except in the current litigation.

Burlington entered into an agreement with Gurtler for the sale of Burcopel CAT, a chemical that adheres to fabric causing it to become water resistant. Pursuant to the terms of the Memorandum of Sale, the product was shipped collect to Gurtler in South Holland, Illinois.[FN1]After receiving the Burcopel CAT, Gurtler dilutes it with water, and distributes and sells the product to its United States and international customers under its "Pulse Shield" trademark.

> FN1. Gurtler is an Illinois Corporation with an established place of business in Sought Holland, Illinois.

**\*2** Burlington does not sell Burcopel CAT to any customers in Delaware. Burlington's sales of products to Delaware customers in 2001, 2002, and 2003 were less than $1,000.00 each year, and comprised approximately 0.0007% of Burlington's annual sales revenues. In 2004, Burlington

directly sold products to three customers in Delaware. Burlington had sales of $4,000.00 to one Delaware customer, $70.00 to a second Delaware customer, and $16,000 .00 to a Delaware distributor. These sales comprised approximately 0.14% of Burlington's 2004 sales revenues.

### III. STANDARD OF REVIEW

Burlington moves to dismiss the third-party complaint for lack of personal jurisdiction over the defendant. "Rule 12(b)(2) of the Federal Rules of Civil Procedure requires a court to dismiss a case when the court lacks personal jurisdiction over the defendant[ ]."*E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates,* 197 F.R.D. 112, 119 (D.Del.2000). In determining whether personal jurisdiction exists, courts engage in a two step analysis. First, the court must decide whether jurisdiction is authorized by the long-arm statute of the state in which the court sits. *Transportes Aeros de Angola v. Ronair, Inc.,* 544 F.Supp. 864-65 (D.Del.1982). If jurisdiction is proper per the long-arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *Id.* (noting, however, "intent of the legislature to exercise jurisdiction over non-residents whenever feasible"); *Compaq Computer Corp. v. Packard Bell Elec., Inc.,* 948 F.Supp. 338, 342 (D.Del.1996) (citation omitted). To satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." ' *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citation omitted).

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 293509 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

Specifically, Gurtler must show that Burlington "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)); *see also Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 108-09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Unless the contacts are continuous and systematic, they must be related to the present cause of action. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414-15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

In determining the jurisdictional question, the court must accept as true the allegations in the complaint, *Altech Indus., Inc. v. Al Tech Specialty Steel Corp.,* 542 F.Supp. 53, 55 (D.Del.1982), but Gurtler bears the burden of alleging facts sufficient to make a *prima facie* showing of personal jurisdiction over Burlington. *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.,* 147 F.Supp.2d 268, 270-71 (D.Del.2001). To meet this burden, Gurtler must adduce facts which 'establish with reasonable particularity' that jurisdiction over the movant exists. *Id.* (quoting *Joint Stock Soc'y v. Heublein, Inc.,* 936 F.Supp. 177, 193 (D.Del.1996)).

## IV. DISCUSSION

### A. Delaware's Long-Arm Statute

**\*3** The first step in the court's analysis is to determine whether any of the provisions of Delaware's long-arm statute, Del.Code Ann. tit. 10 § 3104, warrant the exercise of jurisdiction over Burlington. Burlington contends that the court has no basis to assert jurisdiction, while Gurtler maintains that the conduct of Burlington satisfies the requirements of subsections (c)(1) and (c)(4) of the long-arm statute. The court will address each of these sections below.

### 1. Delaware Long-Arm Statute § 3104(c)(1)

Under subsection (c)(1), the court may exercise jurisdiction over a nonresident who transacts any business or performs any character of work or service in the State. DEL.CODE ANN. tit. 10 § 3104(c)(1). Gurtler asserts that Burlington has acted in consort with Gurtler to place Burcopel CAT into a nationwide distribution network and, as a result, Burcopel CAT may have found its way to Delaware. Thus, Burlington has availed itself of the benefits of the State of Delaware. The court disagrees.

Delaware courts construe the long-arm statute broadly to confer jurisdiction to the maximum extent possible so as to "provide residents a means of redress against those not subject to personal service within the state."*Boone v. Oy Partek Ab,* 724 A.2d 1150, 1156-57 (Del.Super.1997). The Delaware Supreme Court has interpreted subsection (c)(1) as a specific jurisdiction provision that requires a "nexus" between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. *See LaNuova D & B, S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986). In order to meet the requirements of subsection (c)(1), Burlington's actions must be directed at residents of Delaware and the protection of Delaware laws. *Thorn EMI N. Am. Inc. v. Micron Tech., Inc.,* 821 F.Supp. 272, 274 (D.Del.1993). However, when a manufacturer passes title to goods to a third party outside of Delaware, it has not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 293509 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

performed an act in Delaware. *Boone,* 724 A.2d at 1156. In the present case, Burlington did not pass title to Gurtler in Delaware. Rather, Burlington passed title to the Burcopel CAT in South Holland, Illinois. (D.I. 52 ¶ 4). In addition, Burlington's sales of products in Delaware are unrelated to Gurtler's claims and, therefore, cannot give rise to specific jurisdiction. *See ICT Pharms., Inc. v. Boehringer Ingelheim Pharms ., Inc.,* 147 F.Supp.2d 268 (D.Del.2001).

Gurtler maintains that Burlington's actions were directed at Delaware because it engaged Gurtler as a nationwide distributor of Burcopel CAT. Gurtler further asserts that where a party contracts to have its product distributed by another throughout the United States, it contracts to have its product distributed to each state as an individual forum. *See Boone,* 724 A.2d at 1160. The court agrees that a party who contracts to have its product distributed throughout the United States is subject to jurisdiction in any state. There is no evidence in the record, however, that Gurtler was acting as Burlington's distributor of Burcopel CAT. Indeed, Gurtler purchased Burcopel CAT from Burlington, diluted it with water and sold it under Gurtler's "Pulse Shield" trademark. Moreover, the Burcopel CAT does not maintain a separate identity in Gurtler's product and Burlington is not identified to the end user. As such, subsection (c)(1) is not a basis for the exercise of jurisdiction over Burlington.

2. Delaware Long-Arm Statute § 3104(c)(4)

**\*4** Additionally, Gurtler asserts that Burlington has, within the meaning of subsection (c)(4), availed itself of the general jurisdiction of Delaware. Under subsection (c)(4), the court may exercise personal jurisdiction over anyone who "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State. DEL.CODE ANN. tit. 10 § 3104(c)(1). Gurtler contends that jurisdiction is proper under subsection (c)(4) because Burlington's actions with respect Burcopel CAT have caused tortious injury in Delaware, Burlington maintains significant contacts with the District of Delaware, and Burlington receives substantial revenue from the sale of Burcopel CAT to Gurtler.

Delaware courts have interpreted § 3104(c)(4) as a general jurisdiction provision. *See Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.,* 295 F.Supp.2d 400, 405 (D.Del.2002); *Boone,* 724 A.2d at 1155 (citing *Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.,* 685 A.2d 724, 727-28 (Del.Super.1996)). This general jurisdiction provision allows the court to exercise jurisdiction when the defendant's contacts with the forum state are unrelated to the cause of action. *Bell Helicopter,* 295 F.Supp.2d at 405.

First, the court must determine if the alleged acts set forth in the third-party complaint constitute a tortious injury for the purposes of jurisdiction. A tortious act under § 3104(c)(4) is an act "which involves a breach of duty to another and makes the one committing the act liable in damages." *Magid v. Marcal Paper Mills, Inc.,* 517 F.Supp. 1125, 1130 (D.Del.1981). Applying Delaware law, the court finds that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the alleged breach of warranty and negligent misrepresentation by Burlington each constitute a breach of duty owed to Gurtler.

Next, the court must determine if Burlington regularly does or solicits business in Delaware. The court concludes that Burlington does not regularly do business in Delaware. As previously discussed, Burlington is a North Carolina corporation, with no office or place of business in Delaware. (D.I. 52 ¶ 2). Burlington has not appointed any agent for service of process in Delaware and is not registered to do business in Delaware. (*Id.*) It has no local telephone listing, bank accounts, real estate or employees in Delaware.(*Id.*) It has not paid any taxes or franchise fees in Delaware. (*Id.*). It has never commenced any legal action or proceeding in the State of Delaware and has never been named as defendant in any action in Delaware, except for the current litigation. (*Id.*) The court also concludes that Burlington does not regularly solicit business or advertise in Delaware. Further, while Burlington does maintain an Internet website that it can use to solicit business from Delaware, the mere existence of its website does not rise to the level of regularly soliciting business in Delaware. *See Motorola Inc. v. PC-Tel,* 58 F.Supp.2d 349, 352 (D.Del.1999) (discussing extensive advertising by the defendant, both nationwide and in Delaware through newspapers, magazines, and catalogs). Thus, the court concludes that Burlington does not regularly do or solicit business in Delaware.

**\*5** Lastly, the court must determine whether Burlington derives substantial revenue from services or things used or consumed in Delaware. Delaware courts have broadly construed the term "substantial revenue" to mean that two to three percent of total

revenue is sufficient to confer jurisdiction. *See United States v. Consolidated Rail Corp.,* 674 F.Supp. 138, 144 (D.Del.1987). However, when a defendant's sales to customers in Delaware constitute less than one percent of total revenue, it is not substantial enough to warrant an exercise of jurisdiction. *Bell Helicopter,* 295 F.Supp.2d at 405. In the present case, Burlington's sales of products to customers in Delaware in 2001, 2002, and 2003 were about $1,000.00 each year, representing 0.0007% of Burlington's annual sales revenues. (D.I. 53, at 2-3). In 2004, Burlington had sales to three customers in Delaware that totaled approximately $20,070.00. (*Id.* at 3). While Burlington's sales of products to Delaware customers grew in 2004, its Delaware revenue only comprised approximately 0.14% of its total annual sales.(*Id.*) Because Burlington's Delaware revenue was less than 1% of its total annual revenue, it is not substantial enough to warrant an exercise of general jurisdiction. The court, therefore, finds that even though the acts alleged in the third-party complaint, if proved, might constitute a breach of duty owed by Burlington, Gurtler has not made a *prima facie* showing of personal jurisdiction over Burlington under § 3104(c)(4) of the Delaware long-arm statute.

B. Due Process

The second step in the court's analysis is to determine whether exercising jurisdiction comports with the requirements of the Due Process Clause. The Due Process Clause requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "ha[s] certain minimum contacts with [the forum] such that the maintenance of the suit does

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not offend 'traditional notions of justice and fair play." ' *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In order to give non-residents "fair warning" that a particular activity may subject them to litigation within the forum, these "minimum contacts" must be purposeful. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In other words, the defendant's contact must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).[FN2] Finally, "even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *See Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1568 (Fed.Cir.1994).

> FN2. The United States Supreme Court has explained that:
> [t]he "substantial connection" ... between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.... The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for

the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.
> *ICT Pharms.,* 147 F.Supp.2d at 272 (quoting *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

**\*6** Gurtler first asserts that the court should exercise jurisdiction over Burlington because Burlington has purposeful minimum contacts with the State of Delaware of the quantity and type to cause it to reasonably foresee that it would be "haled before a court" located in Delaware. Jurisdiction is proper, according to Gurtler, because it informed Burlington that it diluted Burcopel CAT with water to produce Pulse Shield, which, in turn, it placed into a distribution chain that consisted of laundering facilities across the United States. (D.I. 56, at 4). Burlington, therefore, knew that its Burcopel CAT was shipped nationally as the sole compositional ingredient in Pulse Shield.(*Id.*) Thus, Burlington has minimum contacts to satisfy due process requirements by contracting for the sale of Burcopel CAT to Gurtler, thereby directing its product into the stream of commerce of the United States and Delaware. Gurtler further asserts that, at the time this litigation was brought, Gurtler

Case 1:07-cv-00238-JJF    Document 11-2    Filed 11/26/2007    Page 14 of 16

Not Reported in F.Supp.2d                                                                                          Page 7
Not Reported in F.Supp.2d, 2005 WL 293509 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

and Burlington were involved in significant business negotiations involving Burcopel CAT, which included a proposal by Gurtler that Burlington dilute the Burcopel CAT, affix Gurtler's labeling, and ship it directly to Gurtler's clients. (*Id.* at 5). However, as Gurtler points out, a final contract was never entered. Gurtler contends that these negotiations put Burlington on notice that by providing Burcopel CAT to Gurtler, Burlington would be submitting to the jurisdiction of the districts to which the Gurtler product was shipped. Gurtler relies on *Boone* and *Motorola* to support its stream of commerce theory. Gurtler argues that, as in *Boone* and *Motorola,* the defendant seeking to be dismissed, *i.e.* Burlington, engaged a distributor, *i.e.* Gurtler, who shipped the defendant's product across the country. Thus, not only did Burlington anticipate the fact that its product would be distributed in all states including Delaware, it took affirmative steps to direct its product to Delaware by and through its agreement with Gurtler. (D.I. 56, at 5).

After reviewing the record, the court finds that Gurtler's reliance on *Boone* and *Motorola* is misplaced because both cases are distinguishable from the present case. First, there is no evidence in the record that Burlington engaged Gurtler to be its exclusive distributor of Burcopel CAT in the United States, which was a critical factor in *Boone.*The court in *Boone* found that the defendant had exhibited an intent to serve the Delaware market because it engaged a resident company as the exclusive distributor of its product in the United States and directly benefitted from the distribution. *Boone,* 724 A.2d at 1160. As previously discussed, Gurtler purchased Burcopel CAT from Burlington, diluted it with water and sold it as Pulse Shield. These actions are not

consistent with a distributor/distributee relationship. In addition, the record shows that Burlington does not benefit directly from Gurtler's "distribution." Gurtler asserts that Burlington has received approximately \$66,770.00 for purchases of Burcopel CAT. However, Gurtler does not assert that the money was a direct benefit from its distribution of Pulse Shield. Rather, it was money that Burlington received from the sale of Burcopel CAT to Gurtler alone. This situation is distinguishable from *Boone,* where the defendant earned \$270,000 from sales of its product by its distributor in Delaware. *See id.* at 1158.

*\*7 Likewise, *Motorola* is distinguishable. First, the *Motorola* defendant's product was integrated into a variety of consumer products manufactured by well-known multi-national corporations.[FN3]The goods produced by the corporations were then placed for sale in well-known retail stores, including Caldor and Circuit City, which all had outlets in Delaware. Further, the products were advertised extensively, both nationwide and in Delaware through newspapers, magazines, and catalogs. *Motorola,* 58 F.Supp.2d at 352. While Burcopel CAT is integrated into Gurtler's Pulse Shield, there is no evidence in the record that Gurtler places the Pulse Shield for sale in well-known retail stores with outlets in Delaware. The record is also devoid of evidence that Gurtler advertises the Pulse Shield, either nationwide or in Delaware.

> FN3. The *Motorola* defendant's product was a softmodem that was integrated into Compaq, Phillips, Samsung, Sharp, and Sony consumer electronic products.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 293509 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

More important, the *Motorola* court found that the licensing fees and royalties from which the defendant derived its revenues "appear[ed] to be based upon the sale to *end users* of products containing its softmodems."*Id.* Indeed, the court noted that the "End User distribution channel" of the defendant's licensing agreement "contemplate[d] sale to retail consumers including consumers in Delaware of 'Shipped End User Product[s]' through retail outlets."*Id.* In the present case, Gurtler does not assert that Burlington derives revenue based on the sale of the Pulse Shield to end users. Conversely, Gurtler asserts that Burlington derives revenue based on its sale of Burcopel CAT to Gurtler.

Another important distinction between *Motorola* and the present case is that the *Motorola* defendant maintained an interactive website from which end users could download modem control commands to their computers to enable them to perform certain functions with the defendant's softmodems. In addition, the customers could order products to test their softmodems and obtain customer support directly from the defendant by telephone and Internet. The record also indicated that Delaware customers had utilized the features of the defendant's support network. *Id.* In the present case, Burlington does not offer the same type of customer support network. According to Gurtler, Burlington maintains an Internet website that allows potential clients in Delaware to access certain advertisements. The website also provides a toll free phone number for client communication and order solicitation. Burlington's website offerings are not nearly as extensive as those offered by the defendant in *Motorola.* Moreover, Gurtler has not asserted that end users of its Pulse Shield can obtain customer support from Burlington's website or toll free number.

Finally, Gurtler asserts that Burlington has admitted that it transacts certain business in Delaware and, therefore, has not only availed itself to Delaware by implicitly soliciting business in the state, but also it has derived substantial revenue from Delaware. The court disagrees. As previously discussed, Burlington's Delaware revenue for the years 2001 through 2004 was less than 1% of its total annual revenue for each year and, therefore, not substantial enough to warrant an exercise of jurisdiction. Thus, Burlington does not have sufficient contacts with this forum to compel its appearance here without offending the Due Process Clause.[FN4]

> FN4. The court need not address whether jurisdiction in Delaware comports with the "minimum requirements inherent in the concept of 'fair play and substantial justice" ' because Burlington's contacts with Delaware are insufficient to cause it to reasonably foresee being haled before a Delaware court.

### ORDER

**\*8** For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:
1. Burlington Chemical Company's Motion to Dismiss for Lack of Personal Jurisdiction (D.I.51) is GRANTED.

D.Del.,2005.
M & M Technologies, Inc. v. Gurtler Chemicals, Inc.
Not Reported in F.Supp.2d, 2005 WL 293509 (D.Del.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 9
Not Reported in F.Supp.2d, 2005 WL 293509 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.