

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Agnes Carvel Estate, London, England ) <br> by Pamela Carvel, Delaware Ancillary Administrator) <br> Pamela Carvel, Fiduciary-Creditor, on behalf of ) <br> herself and others similarly situated ) <br> Plaintiff ) <br> v. ) <br> Leonard Ross ) <br> and ) <br> John/Jane Doe 1-20 ) <br> Doe Co. 1-20 ) <br> Defendants ) <br> ) | **AMENDED** <br> **COMPLAINT** <br><br> **DEMAND FOR** <br> **JURY TRIAL** <br><br> Case No. <br> 07-cv-00238 JJF |

## PLAINTIFFS' AFFIDAVIT
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
## AND
## IN SUPPORT OF MOTION TO STAY PENDING DISCOVERY

Pamela Carvel, appearing *pro se*
Delaware Ancillary Administrator
28 Old Brompton Road, Suite 158
London SW7 3SS England
US tel/fax  1 954 524 1909

## **TABLE OF CONTENTS**

Table of Citations ................................................................................................ i

NATURE AND STAGE OF PROCEEDING ................................................ 1

SUMMARY OF ARGUMENT ....................................................................... 2

FAILURE TO MEET THE BURDEN TO DISMISS .................................... 7

STATEMENT OF FACTS .............................................................................. 9

CONCLUSION ............................................................................................... 11

## TABLE OF CITATIONS

*Plummer & Co. Realtors v. Crisafi*, Del.Super., 533 A.2d 1242, 1244 (1987) ................ 3

*Shaffer v. Heitner*, 433 U.S. 186, 211, n. 37, 97 S.Ct. 2569, 2583,
n. 37, 53 L.Ed.2d 683 (1977) ................................................................................ 7

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974) ............... 8

*Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), cert. denied,
513 U.S. 816, 130 L. Ed. 2d 28, 115 S. Ct. 73 (1994) ......................................... 8

*Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) ................................... 8, 9

*Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir.1995) ...................... 4

*Delaware Local Rule* 5.4 ................................................................................ 2

18 U.S.C. §1961, et seq. (RICO), §1964 (a),(c) ................................................ 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Agnes Carvel Estate, London, England ) <br> by Pamela Carvel, Delaware Ancillary Administrator) <br> Pamela Carvel, Fiduciary-Creditor, on behalf of ) <br> herself and others similarly situated ) <br> Plaintiff ) <br> v. ) <br> Leonard Ross ) <br> and ) <br> John/Jane Doe 1-20 ) <br> Doe Co. 1-20 ) <br> Defendants ) <br> ) | **AMENDED COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** <br><br> Case No. <br> 07-cv-00238 JJF |

**PLAINTIFFS' AFFIDAVIT
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND
IN SUPPORT OF MOTION TO STAY PENDING DISCOVERY**

1. This affidavit is made by Pamela Carvel on behalf of Plaintiffs', in opposition to Defendant Leonard Ross' ("Ross", "Defendants") Motion to Dismiss and in support of Plaintiff's Motion to Stay Pending Discovery, based on first hand information acquired during over 17 years of fraud investigation on behalf of Thomas and Agnes Carvel, and from first-hand knowledge of the acts, omissions, and representations made by Defendant(s) in Delaware and outside Delaware.

**NATURE AND STAGE OF THE PROCEEDING**

2. Leonard Ross has been served three times with the Complaint and Amended Complaint, and Appendix, including personal service. Ross refused to Waiver Service, therefore an order for costs request is requested herein. The issues set forth in

1

the Amended Complaint were not and are not before any other state court or District Court. Discovery is herewith requested from the District Court by Praecipe, filed along with this Affidavit because the Delaware District Court was unable to provide information or explanation to a *pro se* litigant concerning the proper form required to request document discovery pursuant to *Delaware Local Rule* 5.4. Plaintiffs seek a stay pending discovery because of the misrepresentation of substantive material facts made by attorneys Ross and his agents in order to justify their motion of dismissal for lack of personal jurisdiction.

## SUMMARY OF ARGUMENT

3.  Defendant Ross seriously, wrongly, misrepresents that the Amended Complaint addresses only "acts of omission" (Ross at 8). Plaintiffs assert Federal jurisdiction in Delaware based on civil RICO statutes (18 U.S.C. §1961, et seq. (RICO), §1964 (a),(c) (civil RICO remedies)), among other claims. Moreover, federal civil RICO claims by an "alien" can be brought in any jurisdiction. Ross engaged in a pattern across state lines, that contains a sequence of events that all have the same and common purpose -- to defraud Agnes Carvel and her successors in interest of substantial Delaware assets, to protect the thieves of those assets, and to defraud State and Federal governments. Such purpose is one of egregiously deliberate, calculated and malicious, fraud and conspiracy, which is a "pattern of racketeering activity". Defendants did unlawfully, knowingly, and intentionally conduct and participate in the conduct and affairs of the enterprise.

4.  Ross' denial of acts over Delaware property and interests creates a very serious problem. If, as Agnes Carvel's attorney, proxy, and the Estate's New York

2

ancillary administrator, Ross did not represent Agnes Carvel's Delaware rights and interests in New York proceedings regarding Delaware law, Delaware corporations and Delaware assets, then the Estate and its beneficiaries were NEVER represented at any time because Ross and the Estate's adversaries failed to give notice (for ALL New York proceedings) to named beneficiaries under the uncontested Last Will, thereby denying due process to Agnes Carvel, her beneficiaries, her creditors, and her successors in interest.

5. The truth will be evident through discovery of the Defendants acts and ultimate identification of the co-conspirators. At this same time, discovery is being sought by Pamela Carvel who is compelled to appear *pro se* for lack of funds due to obstructions by Defendants apparently intended to prohibit due process and equal treatment for advocates defending Agnes Carvel as an elder person, charitbale benefactor, and her successors in interest.

6. The Amended Complaint asserts that Ross actively and intentionally acted against the Delaware interests of Agnes Carvel and her successors in interest, and entered into a pattern of conspiracy with others ("Doe" defendants to be identified through discovery) including but not limited to conversion, collusion to defraud, conspiracy to commit fraud, abuse of process, negligence, fraudulent accounting, tax fraud, conspiracy against rights, and other tortuous acts cited in the Amended Complaint.

7. When personal jurisdiction is challenged by a motion to dismiss, the Plaintiffs have the burden to show a basis for the Court's jurisdiction over the nonresident Defendant(s) (*Plummer & Co. Realtors v. Crisafi*, Del.Super., 533 A.2d 1242, 1244

(1987)). Plaintiffs need only make a *prima facie* showing of jurisdiction where the court did not hear testimony or make factual findings (*Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir.1995); *Omeluk v. Langsten Slip & Batbyqqeri A/S*, 52 F.3d 267, 268 (9th Cir.1995)). All factual inferences must be viewed in a light most favorable to the Plaintiffs (*Greenly v. Davis*, Del.Supr., 486 A.2d 669, 670 (1984)).

8.  Jurisdiction is also asserted over Ross as non-resident in Delaware based on civil conspiracy with one or more Delaware corporations, including but not limited to 1) Carvel Corporation and its subsidiaries; 2) the alleged CCCC Holdings Corp. and its alleged subsidiaries; 3) the alleged Andreas Holding Corp. and its alleged subsidiaries; 4) entities that received, disbursed, or alleged ownership control over Delaware corporate stock and its proceeds, to the exclusion of Agnes Carvel and her successors in interest.

9.  Pamela Carvel assisted the Federal Bureau of Investigation and the New York Attorney General investigations that resulted in the successful prosecution of would-be sham purchasers (William Zuga; Francis Zarro) of Delaware corporate assets (Andreas Holdings Corp. d/b/a All American Sports City). Ross played an integral part in the investigations before 2001 when he entered into convert collusion with the Estate's adversaries to obstruct all assets from leaving New York or being paid to Pamela Carvel. (see samples of correspondence, B1-15; B-23).

10. In Delaware, the exercise of personal jurisdiction over an individual need not be solely premised on the acts in Delaware of that individual party. Rather, jurisdiction over that individual may be appropriate based on the actions of other defendants ("Doe" defendants herein) involved in a civil conspiracy and when there is

clear jurisdiction over those other parties, such as the officers, directors, or alleged shareholders of the above Delaware corporations. The conspiracy theory was first clarified as a basis for personal jurisdiction in Delaware by the case of *Instituto Bancario Italiano SpA v. Hunter Engineering Company. Inc.*, 449 A.2d 210 (Del. 1982).

11.  This civil conspiracy basis "provides a framework with which to analyze a foreign defendant's contacts with Delaware." (*Hercules, Inc. v. Leu Trust & Banking Ltd.*, 611 A.2d 476, 482 n.6 (Del. 1992)). To establish jurisdiction, Plaintiffs in Delaware by the Amended Complaint satisfied a five (5) part test by establishing that: (1) a conspiracy to defraud [or other unlawful act] existed; (2) the defendant was a member of that conspiracy; (3) a <u>substantial effect</u> in furtherance of the conspiracy occurred in Delaware; (4) the defendant <u>knew or had reason to know</u> of the acts in Delaware or that acts outside Delaware would have an <u>effect</u> in Delaware; and (5) the acts in, or <u>effects on</u>, Delaware was a direct and foreseeable result of the conduct in furtherance of the conspiracy (*Id.*; emphasis added). Ross acted in Delaware by advising on Delaware corporations and instructing Delaware counsel (Robert Valihura, and others), preparing Delaware corporate documents, and attending Delaware corporate meetings (see sample invoices, Appendix B16-25). Defendants' actions are anything but "random, fortuitous or attenuated." (*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). Jurisdiction in Delaware is proper because Defendants' out of state conduct was intended to, and did, result in harmful effects in Delaware.

12.  The defendant need not ever have been physically present in the forum state for specific jurisdiction to apply. (*Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

5

476 (1985); *DataDisc*, 557 F.2d at 1288; *California Software*, 631 F.Supp. at 1360; *Panavision Intern'al L.P. v. Toeppen*, 17 93 8 F. Supp. 616 (C.D. Cal 1996), aff'd, 141 F.3d 1316, 1321 (9th Cir. 1998)).

13.     A defendant never physically present in the forum may nonetheless be subject to jurisdiction there when the defendant intends to and does cause damage in the forum. The "effects test" was established in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the Court held that a reporter and an editor, both Florida residents, were subject to personal jurisdiction in California for an allegedly defamatory article that they had written for publication in a national magazine. The Court held that jurisdiction in California was proper because California was "the focal point of both the story and of the harm suffered." (*Id.* at 789). The Court emphasized that "petitioners [were] not charged with mere untargeted negligence ... [but with] intentional, and allegedly tortious, actions ... expressly aimed at California." (*Id.* at 789-90; *see also California Software*, 631 F.Supp. at 1356 (holding that jurisdiction could be based on out- of-state communications made to out-of-state residents when the communications "were expressly calculated to cause injury in California"); *Indianapolis Colts. Inc. v. Metropolitan Baltimore Football Club L.P.*, 34 F.3d. 410, 411- 12 (7th Cir.1994) (holding that in a trademark case, jurisdiction was proper under *Calder* because if the defendant infringed the plaintiff's trademarks, the injury would be felt mainly in Indiana)). In such circumstances, "an individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause injury in California." (*Calder* 465 U.S. at 790).

6

14. The burden on the Defendant will be considered in light of other relevant factors, including Delaware's interest in adjudicating the dispute. (*McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); the plaintiff's interest in obtaining convenient and effective relief, see *Kulko v. California Superior Court*, 436 U.S., at 92, 98 S.Ct., at 1697, at least when that interest is not adequately protected by the plaintiff's power to choose the forum, cf. *Shaffer v. Heitner*, 433 U.S. 186, 211, n. 37, 97 S.Ct. 2569, 2583, n. 37, 53 L.Ed.2d 683 (1977); the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, see *Kulko v. California Superior Court*, 436 U.S., at 93, 98, 98 S.Ct., at 1697, 1700. [710]).

15. Therefore, the Court "need only determine whether personal jurisdiction in this case would meet the requirements of due process." (*Core-Vent*, 11 F.3d at 1484 (quoting *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir.1989)); *Panavision Intern'al L.P. v. Toeppen*, 17 93 8 F. Supp. 616 (C.D. Cal 1996), aff'd, 141 F.3d 1316, 1321 (9th Cir. 1998)).

## FAILURE TO MEET THE BURDEN TO DISMISS

16. The party who is making a motion to dismiss must meet a heavy burden because such motions run contrary to the strong institutional bias in American jurisprudence to have matters decided on their merits (*Baker v. Cuomo*, 58 F.3d 814, 818 (2d Cir. 1995)).

17. A court should grant a motion pursuant to Rule 12(b)(6), therefore, "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." (*Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)).

18. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." (*Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)).

19. The court must also read the complaint generously (*Leslie Fay Cos. v. Corporate Property Assocs. 3, (In re Leslie Fay)*, 166 B.R. 802, 807 (Bankr. S.D.N.Y. 1994)), and draw all reasonable inferences in favor of the pleading party (*Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), cert. denied, 513 U.S. 816, 130 L. Ed. 2d 28, 115 S. Ct. 73 (1994)).

20. Although plaintiff bears the burden of establishing personal jurisdiction over defendant, in the preliminary stages of litigation this burden is "light." (*Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)). Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a *prima facie* showing that jurisdiction exists. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary

presentation by the moving party (*Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).

21. The exercise of personal jurisdiction over Defendant would not offend traditional notions of "fair play and substantial justice" (*Burger King Corp.*, 471 U.S. at 476).

## STATEMENT OF FACTS

22. Since 1991, Ross acted over Delaware corporations, assets, issues, litigation, and claims (see B1, 5, 16-25):

   (a) individually;

   (b) as partner of Ross and Matza;

   (c) as personal attorney advising Agnes Carvel since 1992;

   (d) through Ross and Matza as attorneys for Agnes and Pamela Carvel as fiduciaries since 1991;

   (e) as legal adviser and proxy to Agnes Carvel in corporate meetings; and

   (f) as New York ancillary administrator with will attached for the Agnes Carvel Estate ("Estate").

23. The recitation of "facts" by the Defendant Ross and his agents is void of Ross' defenses as attorney for the Carvels, conceals the judicial abuses to prejudice equal treatment in Westchester Surrogate's to which Ross testified under oath, the all findings in the Carvels' favor, and avoid of all the findings against the Estate's adversaries in four prior criminal investigation by the Attorney General and Federal Bureau of Investigation regarding Delaware corporate assets (as sample see B1-15).

24. Pamela Carvel hired Leonard Ross and Eve Markewich on behalf of Agnes Carvel and the Estate. Leonard Ross billed and was paid by Pamela Carvel for over 10 years to investigate and prosecute civil and criminal conspiracies to defraud the Carvels. Ross was intimately engaged with investigations by the Federal Bureau of Investigation, the New York Attorney General's Securities Protection Unit, and investigations paid by Pamela Carvel disclosing forgery, check conversion, fraudulent transfers, and other civil and criminal activities in a conspiracy to defraud the Carvels.

25. In the New York Law Journal (Complaint Appendix A-14), Eve Markewich admitted her knowledge of the conspiracy of "professionals" to defraud Agnes Carvel; however, neither Markewich nor Ross took any steps to recover damages or seek redress of any kind because, as stated by Ross to Pamela, these same adversaries and their agents promised Markewich/Ross about $4 million as long as they prohibited all funds from leaving New York or being paid to Pamela Carvel as fiduciary-creditor.

26. This conspiracy seeks to deprive Agnes Carvel and her successors in interest of the true and full value of Delaware assets and claims estimated to be valued at over $300 million.

27. This conspiracy seeks to harm and obstruct Pamela Carvel as fiduciary and sole advocate for Agnes Carvel as an elder person, and as executor and Delaware ancillary administrator, by deprivation of rights guaranteed by the law of the United States, in an attempt to stop all inquiries in to the stolen Delaware assets and collusion used to wipe out Delaware claims by Ross.

## CONCLUSION

28.     The overwhelming extent of the game played between Defendants and Surrogate Scarpino is merely touched on the pages of the Amended Complaint. The crimes that plagued the Carvels are eating away at countless other estates and other beneficiaries every day and have become the subject of F.B.I. investigations into political corruption. Some means to enforce Constitutional rights despite the manipulations of profiteers in Surrogate's Courts must be found. Delaware District Court is just a beginning.

29.     Plaintiffs seek orders from the District Court:

1)     for a stay pending discovery;

2)     for assesment of Plaintiff's costs against Defendants and their agents, not payable from the Estate;

3)     for discovery to identify, quantify and assert damages inflicted on Plaintiffs by Defendant Leonard Ross and others yet to be identified through discovery;

2)     to disaffirm all individual and professional acts taken by Defendants in the name of Plaintiffs;

3)     for discovery of the extent of Defendants' criminal acts and those with whom they conspired to defraud Plaintiffs;

4)     to statutorily disqualify the acts of Westchester County New York Surrogate Anthony Scarpino in all Carvel estate matters because of covert conflicts of interest, bias, failure to follow the law, violations of Constitutional rights of Plaintiffs, and apparent

bribery in collusion with Defendants so as to fraudulently convert Plaintiffs assets to Defendants;

5) for original damages as of 1990 in a value estimated in excess of $300 million, of which approximately $250 million are Delaware assets.

6) for taxes, penalties, statutory interest on the original damages, and for triple damages pursuant to RICO statutes.

WHEREFORE, Plaintiffs move the Court to deny Defendants' Motion to Dismiss and to grant Plaintiff's Motion to Stay Pending Discovery.

December 6, 2007

*Pamela Carvel* [signature]

Pamela Carvel, appearing *pro se* for lack of funds
28 Old Brompton Road, Suite 158
London W7 3SS England, U.K.
US tel/fax 1 954 524 1909

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Agnes Carvel Estate, London, England )<br> by Pamela Carvel, Delaware Ancillary Administrator)<br>Pamela Carvel, Fiduciary-Creditor, on behalf of )<br> herself and others similarly situated )<br>  Plaintiff )<br>  )<br>  v. )<br>Leonard Ross )<br> and )<br>John/Jane Doe 1-20 )<br>Doe Co. 1-20 )<br>  Defendants ) | **AMENDED<br>COMPLAINT**<br><br>**DEMAND FOR<br>JURY TRIAL**<br><br>Case No.<br>**07-cv-00238 JJF** |

## CERTIFICATE OF SERVICE

I, Pamela Carvel, appearing *pro se*, hereby certify that on December 7, 2007, one original and a true and correct copy of Plaintiff's Affidavit in opposition to Defendant's Motion to Dismiss and Affidavit in support of Plaintiffs' Motion to Stay pending discovery in above proceeding, was sent by overnight delivery to be filed with the Clerk of the Court which will send notification that such filing is available for viewing and downloading to:

> Leonard Ross
> Ross and Matza
> 265 Sunrise Highway, Suite 65
> Rockville Centre, New York 11570 USA

I hereby certify that Leonard Ross is a non-resident of Delaware who knowingly and intentionally committed acts and omissions over Delaware

assets and effecting Delaware claim issues, in collusion with co-conspirators in Delaware and elsewhere.

Additionally, I hereby certify that on December 7, 2007, copy of the same documents was served by overnight delivery to:

>Sean Brennecke
>Bouchard Margules & Friedlander. P.A.
>222 Delaware Avenue, Suite 1400
>Wilmington, DE 19801 USA
>302 573 3500

December 7, 2007

*[signature]*
Pamela Carvel, appearing *pro se*
**28** Old Brompton Road, Suite **158**
London SW7 3SS England
US tel/fax fwd 1 954 524 1909

FedEx International Air Waybill — Customs Copy

**1 From**
Date: 1.07.07
Sender's FedEx Account Number: (illegible)
Sender's Name: CARVEL
Phone: 0342741126
Company: MAIL BOX'S ETC
Address: 45a-45a STRAND
City: LONDON
Country: GB

**2 To**
Recipient's Name: CLERK
Company: DISTRICT OF DELAWARE
Address: 844 N. KING ST
Dept/Floor: CLERK
Phone: 1-252-573-6170
City: WILMINGTON
State/Province: DE
ZIP/Postal Code: 19801
Country: USA

**3 Shipment Information**
Total Packages: 1
Total Weight: 0.5 kg
Commodity Description: BUSINESS DOCUMENTS
Country of Manufacture: UK
Value for Customs: NCV

**4 Express Package Service**: FedEx Intl. Priority
**5 Packaging**: FedEx Envelope
**6 Special Handling**
**7a Payment**: Sender
**7b Payment (duties and taxes)**: Recipient
**8 Your Internet Billing Reference**: 17831

FedEx Tracking Number: 8608 5612 2293 0460
Origin Station ID: URSA
Destination Station ID: XB
Routing: 2WA

Sender's Signature: (signed)