

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Agnes Carvel Estate, London, England<br>by Pamela Carvel, Delaware Ancillary Administrator<br>Pamela Carvel, Fiduciary-Creditor, on behalf of<br>herself and others similarly situated<br>Plaintiff<br>v.<br>Leonard Ross<br>and<br>John/Jane Doe 1-20<br>Doe Co. 1-20<br>Defendants | **AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Case No.<br>07-cv-00238 JJF |

**PLAINTIFFS' AFFIDAVIT**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**AND**
**IN SUPPORT OF MOTION TO STAY PENDING DISCOVERY**

# APPENDIX

Pamela Carvel, appearing *pro se*
Delaware Ancillary Administrator
28 Old Brompton Road, Suite 158
London SW7 3SS England
US tel/fax 1 954 524 1909

2007 DEC 10 AM 10:00
FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

AUG-14-1997 17:03 FROM ROSS & MATZA ESQS TO PAMELA CARVEL P.01

# ROSS & MATZA

ATTORNEYS AT LAW

29 JOHN STREET • SUITE 1004 • NEW YORK, N.Y. 10038

(212) 619-4180 • FAX (212) 587-3326

LEONARD M. ROSS
JACK D. MATZA

OF COUNSEL

DENNIS STUKENBROEKER
LONDON, U.K.

MARTIN BRANDPON
SAN FRANCISCO, CA.

August 14, 1997

Credit Suisse First Boston
11 Madison Ave.
New York, NY 10010

Att: Jennifer Huffman

Re: Timberbrook Golf Estates
Transaction Code: Cred/Suisse/9640
Security Code: CHS-10-CS

Dear Ms. Huffman:

As we discussed, this office represents a party with reference to the sale of certain property in upstate New York. In regard to that proposed transaction our client has been given the annexed document on letterhead of Credit Suisse Group dated July 4, 1997. According to the document, Credit Suisse Group represents that for 30 banking days it has irrevocably and unconditionally has reserved $10,000,000 in its accounts for the Timberbrook Golf Estates transaction. The 30-day period expires on August 15, 1997.

Please review the document in its entirety and contact this office as soon as possible to verify the legitimacy of the document and the information set forth therein.

I thank you in advance for your assistance and cooperation on this matter.

Very truly yours,

Leonard M. Ross

Via Fax (212) 325-8222
LMR:sf
encls.

B-1

TOTAL P.01

TOTAL P.02

AUG. 15. 1997 11 02AM CREDIT SUISSE FIRST BOSTON TO NO. 728122 P. 3.03

04-JUL-97 18:39

CREDIT SUISSE | GROUP

CREDIT SUISSE GROUP

CP ... 20-818-1 Telephone
CH-2001 Neuchâtel Telefax

To : Timberbrook Golf Estates
Att: Mr W Suga
33-16 81 Street
Jackson Heights
N.Y 11372
U.S.A

Neuchatel, 4 July 1997

Transaction code : Cred/Swiss/9640
Security code : CHS-10-CS
Account name : Timberbrook Golf Estates
Amount : 10 Million USD

We, the undersigned, Credit Suisse, hereby confirm with full legal responsibilities and under penalty of perjury that the amount of United States Dollars Ten Million ( USD 10,000,000 ) has been irrevocable and unconditionally reserved in this bank for Timmberbrook Golf Estates under security code CHS-10-CS for a period of thirty (30) banking days computed from the date of this letter.
We further confirm that the subject funds are free and clear of all liens and encumbrances and of non criminal origin and will remain blocked for the period stipulated.

These funds are expressly reserved for the purpose realising your project under the transaction code above. In this regard the funds can be SWIFT wire transferred in exchange for an One (1) year and One (1) day Prime Bank Guarantee in the face amount of United States Dollars Ten Million (USD 10,000,000) issued by an acceptable top Western European bank or American bank rated AA or better with verbiage acceptable to our bank and our accountholder.
We accept in this the Korea exchange bank as the guarantor bank.

Terms and conditions of this letter are hereby confirmed with full legal responsibility and under penalty of perjury in accordance with rules and regulations of the International Chamber of Commerce (I.C.C.) in Paris.

This is an operative, assignable and callable instrument and may be verified on a bank to bank basis with the undersigned.

Credit Suisse
E. ...
Executive manager

Credit Suisse
R. ...
Sr bank officer

B-2

AUG-15-1997 11:17 FROM ROSS & MATZA ESOS TO 7516746 P.02

CREDIT SUISSE | FIRST BOSTON

CREDIT SUISSE FIRST BOSTON CORPORATION

Eleven Madison Avenue
New York, NY 10010-3629

Telephone 212 325 2000

By Fax and First Class Mail

August 15, 1997

Leonard M. Ross, Esq.
Ross & Marza
Attorneys at Law
29 John Street, Suite 1004
New York, NY 10038

Dear Mr. Ross:

You have asked me to verify the legitimacy of the attached correspondence. After review of the document, is our opinion that it is not legitimate correspondence from the Credit Suisse Group. If I can be of further assistance in this matter, please let me know.

Very truly yours,

Jennifer H. Huffman
Assistant Vice President
and Litigation Counsel

Encl.

B-3

7227001.CTD 10:58 AM 08/15/97\1

# Carvel Estate Sale Still On Ice

By TANYA STEPAN
*Staff Reporter*

PINE PLAINS — What appeared to be a likely sale of the Tom Carvel Estate has hit a snag.

Some 2,000 acres of the deceased ice cream moguls's estate, including a golf course, the Sports City Complex and Tri-Arts, is sought by a group of investors for $6 to $8 million.

But lawyers are questioning a $10 million letter of credit from Credit Suisse in Neuchatal, Switzerland, produced by the buyers.

Executors to the Carvel Estate and Carvel family members have been involved in a legal battle over the management of the estate for many years and disagree on issues concerning the sale.

"I checked it (the credit) out and was informed by Credit Suisse that it was a fake. The buyer's using phony documents," alleged Leonard Ross, Agnes Carvel's lawyer, from the firm Ross & Matza of New York City.

The buyer has since indicated he will not use the letter of credit and has arranged alternative financing which could again include the Credit Suisse.

"It really doesn't matter. It's a moot point," said Donald Snider of Baer, Marks & Upham in New York City about the document's authenticity. Mr. Snider, the lawyer for the executors of the Carvel Estate, said he has not yet looked into the authenticity of the letter of credit Mr. Ross believes is a fraud.

Confirmation of the Suisse Group funding is mandatory before a sale can take place. Snider said, however, if the buyers knowingly produced false documents, he would advise against allowing them to purchase the property.

The potential buyers include William Zuga, who is the principal of Timberbrook Golf, an offshore company. Mr. Zuga operates out of his apartment in Jackson Heights, Queens. Zuga has identified three partners, an

See CARVEL, Page A5

## . . CARVEL CONTINUED

dividual from the Far East and a viss citizen, as well as Wilbur Stakes Horizon Capitol of America based Stanford, Snider said.

Zuga plans to make the Carvel land o a destination travel spot. "It is a mprehensive and ambitious plan," ider said. The 15-year development in includes 360 condominium golf las, 100 "10-acre family home sites," hotel and conference center, a golf ademy, a 72-hole golf course, indoor and outdoor tennis courts, a health a and an equestrian center.

Ross said he believes the executors ve failed in their duties and wants em removed from handling Carvel's tate. The executors are Betty Godly, rs. Carvel's niece, and Herbert Roth, o worked as a lawyer for Tom rvel.

"The executors have shown that ey have no ability to legitimately l this property. They ended up in a udulent land scam. Their job is to look into a purchaser of the property, to make sure everything is legitimate. They didn't do this," said Ross.

Snider has met with Zuga five or six times personally over the past year, but said he has proceeded cautiously in his negotiations.

"They (the investors) are not people anyone knows anything about," Snider said. Snider however is eager for the sale, adding that the largest offer in the past has been $3 to $4 million.

"It should be sold. It should be sold for the best price," he said. At this point, the executors are considering two options. One is selling the property for $6 million in cash, or selling it for close to $8 million, realizing that a portion of the property would be bought via loans. The credibility of this financing arrangement has yet to be established.

The second option involves a $30-million development loan from Credit Suisse, the details of which Zuga is still "finalizing," Snider said.

The lawyers also appear to disagree on whether selling all 2,000 acres is the best option.

"She (Mrs. Carvel) has never been in favor of selling Sports City. It's her baby," Ross said.

The property itself is actually owned by two corporations owned by Carvel, the Chain Location of America and Andreas Holdings Corp. Sales of land owned by these corporations must be approved in court. Westchester's surrogate court is hearing the case and a conference is scheduled for Sept. 4 when all interested parties are meeting to write up their "wish lists." The sale may include certain stipulations such as retaining the name Tom Carvel for the development as well as ensuring that Tri-Arts, a local theater organization, maintain its home on the property. However, right now there's no sale and no guarantees.

# OWEN & DAVIS PC

805 THIRD AVENUE
NEW YORK 10022-7513
TELEPHONE (212) 754-1700
TELECOPIER (212) 754-1727
E-MAIL odny@owendavis.com

December 5, 1997

**By Hand**

Donald S. Snider, Esq.
Baer Marks & Upham LLP
805 Third Avenue
New York, NY 10022-7513

Re: Estate of Thomas Carvel/Proposed Sale of Sports City Properties

Dear Mr. Snider:

I have been asked by Agnes Carvel and her attorneys, John Lang of Loeb & Loeb, and Leonard Ross, to advise them with respect to the various proposals by the executors of the Estate of Thomas Carvel to sell certain assets of the Estate that are collectively referred to as the Sports City Properties. I understand that you have been serving as real estate counsel to the executors with respect to these matters.

It is my understanding that you have abandoned your proposal to sell these properties to an entity known as Timberbrook Golf Estates, Inc., which you described in a letter to the Westchester County Surrogate's Court, dated August 20, 1997. It has been revealed that the principal of that transaction, William A. Zuga, the President of Timberbrook Golf Estates, Inc., had proferred to you a $10 million Letter of Credit, dated July 4, 1997, on the letterhead of Credit Suisse Group, Neuchatel, which was apparently forged. In addition, it was discovered that the attorney representing Timberbrook and Mr. Zuga, Wilburn S. Stakes, is a disbarred Kansas attorney who pleaded guilty to wire fraud in the U.S. District Court for the District of Kansas in March, 1984.

It is my understanding that you are now negotiating the sale of the Sports City Properties to an entity known as Taconic Golf, LLC, whose principal is Francis A. Zarro, Jr. Based on the letter dated October 23rd from the attorney representing Mr. Zarro and Taconic Golf, LLC, David B. Sall, this transaction involves a purchase price of either $8.5 million

or $9.5 million, the bulk of which will be financed with notes and mortgages from the purchaser.

In an affidavit you recently submitted to the Surrogate's Court, the executors asserted that "Mr. Zarro . . . is a highly experienced developer of complex real estate projects and . . . has the financial ability to . . . complete the purchase of the Sports City Properties." Affidavit of Betty S. Godley and Herbert F. Roth, sworn to November 11 and November 12, 1997, at ¶ 27.

I do not know the basis for this statement, but it is contradicted by the fact that Mr. Zarro has been the subject of personal bankruptcy proceedings pending in the U.S. Bankruptcy Court for the Southern District of New York since August 24, 1994. *In re Francis A. Zarro, Jr.*, Chapter 7, Case No. 94-44013 (SMB). Based on my review of the docket entries to date in that proceeding, it appears that Mr. Zarro is, in fact, a debtor with a long list of creditors and an equally long history of failed business transactions.

Since this proposed transaction comes on the heels of a previous proposal that involved forged a financial instrument and a convicted felon, I would expect a high degree of care on your part to ensure the *bona fides* of any prospective purchaser of the properties. However, what I have learned to date about Mr. Zarro suggests that this is not the case. I would like to meet with you at the earliest opportunity to discuss the proposed Sports City transaction, and the information we have learned concerning Mr. Zarro.

Since one of the interested parties in this matter is the Carvel Foundation, I am sending a copy of this letter to Assistant Attorney General Laura Werner of the Attorney General's Charities Bureau.

Sincerely yours,

[signature]

R. Scott Greathead

RSG/jm
Cc: A.A.G. Laura Werner
John Lang, Esq.
Leonard Ross, Esq.

# OWEN & DAVIS PC

805 THIRD AVENUE
NEW YORK 10022-7513
TELEPHONE (212) 754-1700
TELECOPIER (212) 754-1727
E-MAIL odny@owendavis.com

December 17, 1997

**By Hand**

Donald S. Snider, Esq.
Baer Marks & Upham LLP
805 Third Avenue
New York, NY 10022-7513

Re: Estate of Thomas Carvel/Proposed Sale of Sports City Properties

Dear Mr. Snider:

You have not responded to my December 5 letter concerning the proposals by the executors of the Estate of Thomas Carvel to sell the Sports City Properties, and specifically the pending proposal to sell this property to an entity known as Taconic Golf, LLC, whose principal is Francis A. Zarro, Jr. As my letter informed you, Mr. Zarro has been the subject of personal bankruptcy proceedings pending in the U.S. Bankruptcy Court for the Southern District of New York since August 24, 1994, and appears to be a debtor with a long list of creditors and an equally long history of failed business transactions.

We now have obtained documents from the Bankruptcy Court filings in Mr. Zarro's case indicating that he is also the subject of serious fraud allegations. For example, the Court-appointed Chapter 7 Bankruptcy Trustee, Ian J. Gazes, has commenced an adversary proceeding that seeks to bar Mr. Zarro's discharge from bankruptcy on the grounds (among others) that he has "fraudulently" withheld information concerning his property and financial affairs, has "refused to obey" a Court order requiring the production of documents, has "failed to explain how he came to incur in excess of $20,000,000 in debts," and has "made several false statements in connection with this case." *See*, Complaint in *Ian J. Gazes, Trustee, v. Francis A. Zarro, Jr.*, Adversary Proceeding No. 95/9844A, Chapter 7 Case No. 94-B-44013 (SMB), United States Bankruptcy Court, S.D.N.Y.

In addition to the Trustee's allegations of fraud and wrongdoing, several of Mr. Zarro's creditors have asserted fraud charges against him. For example:

- In *Ronald M. Scheckter v. Francis A. Zarro, Esq.*, Adversary Proceeding No. 95/8049A, the plaintiff, who has

filed a bankruptcy claim for in excess of $2,500,000, seeks to bar Mr. Zarro's discharge from bankruptcy on the grounds that he committed fraud and converted funds belonging to the plaintiff while acting as his attorney in connection with an investment in a real estate development know as North Salem Center.

- The plaintiff in *Anna Baker v. Francis A. Zarro, Jr., Esq.*, Adversary Proceeding No. 95/9092A, has filed a bankruptcy claim for $56,138, and alleges that Zarro "often carried on the legal representation of his clients in a deceptive, fraudulent, predatory and unlawful manner," that he is the subject of an investigation by the Disciplinary Committee of the Appellate Division, First Department, that he fraudulently "converted" $40,000 belonging to the plaintiff in the course of a real estate transaction in which he represented her, that he engaged in a number of other transactions intended to defraud his creditors, and that his discharge should be barred.

- In *Ray Mallozzi v. Francis A. Zarro, Jr., Esq.* Adversary Proceeding No. 95/9321A, the plaintiff, who has filed a bankruptcy claim against Mr. Zarro for $138,746, also alleges a number of fraudulent acts by Mr. Zarro, and seeks to bar his discharge.

Copies of these pleadings are enclosed for your information.

In short, a transaction involving Mr. Zarro, particularly one that involved notes or other forms of credit, would not appear to be prudent or sensible. If you disagree with this conclusion, I would appreciate hearing the reasons.

Sincerely yours,

R. Scott Greathead

RSG/jm
cc: A.A.G. Laura Werner
John Lang, Esq.
→ Leonard Ross, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------X

In re:

NEW DEAL PROJECTS, LLC

Debtor.

-------------------------------X

LOCAL RULE 1007-2 AFFIDAVIT

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

Francis A. Zarro, Jr. being duly sworn, deposes and says:

1. I am the Manager of New Deal Projects, LLC, a New York Limited Liability Company ( the "Debtor") which is engaged in the business of owning and developing a golf facility (the "Facility") previously known as the Segalla Country Club in Amenia, New York 12501.

2. Nine months ago the Debtor obtained short term financing of approximately $7,800,000 from Country Club Funding LLC, a Colorado limited liability company, (the "Lender") for the purpose of acquiring and improving the Facility. The loan became due in June of this year, whereupon the Lender declared the loan in default resulting in an increase in the interest rate to twenty eight (28%) percent per annum.

3. The Debtor leases the Facility to American Pastime LLC, a New York limited liability company (the "Lessee"), which entity operates the Facility and pays all operating bills and expenses.

4. The Lender is now seeking to institute a foreclosure action which would have a detrimental effect on (i) the ability of the Debtor to conclude a refinancing of the Facility with senior and junior lenders, and (ii) those employed by the Lessee at the Facility who number in the excess of one hundred (100) persons.

5. In order to preserve the assets of the Debtor from foreclosure, and preserve the substantial equity of the Debtor in the facility, the debtor has concluded that it would be in the best interests of the secured, and equity holder to file for protection under chapter 11 of the Bankruptcy Code.

6. The Debtor has no unsecured creditors since the Facility is operated by the Lessee.

7. The following information is furnished with respect to each of the holders of the five largest secured claims including the name, address, amount of claim, an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed:

(a) Country Club Funding, LLC, c/o Cornerstone Private Capital, LLC, 1625 Broadway, Suite 1420, Denver, Colorado 80202 presently holds a mortgage in the principal amount of $7,887,500.00. The collateral securing this mortgage is the real property with improvements known as the Island Green Country Club, Route 22, Amenia, New York 12501. The collateral securing this claim has an approximate present value of $16,000,000.00.

(b) Bash, LLC c/o Bruce D. Friedberg, Esq., 10 East 40th Street - Penthouse, 46th Floor, New York, New York 10016-0301 presently holds a mortgage in the principal amount of $650,000.00. the collateral securing this mortgage is the real property with improvements known as the Island Green Country Club, Route 22, Amenia, New York

12501. The collateral securing this claim has an approximate present value of $16,000,000.00.

(c) The Estate of Thomas Carvel, Chain Locations of America, Inc. and Andreas Holdings Corp., collectively c/o Andreas Holdings Corp., 35 East Grassy Sprain Road - Suite 203A, Yonkers, New York 10701 presently holds a mortgage of record in the principal amount of $625,000.00. The collateral securing this mortgage is the real property with improvements known as the Island Green Country Club, Route 22, Amenia, New York 12501. The collateral securing this claim has an approximate present value of $16,000,000.00

(d) Roger Rulewich Group, LLC, 160 Purple Meadow Road, Bernardston, Massachusetts 01337 has filed a mechanic's lien in the amount of $242,000.00 against the real property with improvements known as the Island Green Country Club, Route 22, Amenia, New York 12501, whose present value is approximately $16,000,000.00

(e) Poluzzi Painting, Inc., 394 Titusville Road, Poughkeepsie, New York 12603 has file a mechanic's lien against the real property with improvements known as the Island Green Country Club, Route 22, Amenia, New York 12501, in the amount of $7,460.00 whose present value is approximately $16,000,000.00

None of the aforementioned claims is disputed.

8. A summary of the Debtor's assets and liabilities are as follows:

**ASSETS**

| | | |
|---|---|---|
| Land, buildings and improvements | | $16,000,000.00 |
| Lease with American Pastime LLC | | 650,000.00 (per yr.) |
| Loan receivable from American Pastime West LLC | | 500.000.00 |
| Bond (Dept. of Transportation) | | 15,000.00 |
| Security Deposit | | 60,000.00 |
| | TOTAL | $17,225,000.00 |

**LIABILITIES**

| | |
|---|---|
| First Mortgage<br>Cornerstone Private Capital LLC<br>Country Club Funding LLC | $ 8,000.000.00 |
| Second Mortgage<br>Bash, LLC | 650,000.00 |
| Third Mortgage<br>Estate of Thomas Carvel<br>Chain Locations of America, Inc.<br>Andreas Holdings Corp. | 625,000.00 |
| Liens | 311,000.00 |
| Misc. Payables | 350,000.00 |
| Office Lease | 120,000.00 (pr. yr.) |
| TOTAL | $10,056,000.00 |

9. *The location of the Debtor's substantial assets, its books and records is:*

Island Green Country Club
Route 22
Amenia, New York 12501

10. The Lender has threatened to foreclose its first mortgage on the land, buildings and improvements thereon of the Debtor located at island Green Country Club, Amenia, New York

11. The Debtor is managed by Francis A. Zarro, Jr. who has managed the Debtor since its inception. Mr. Zarro is responsible for the financial management of the Debtor. Mr. Zarro is an attorney-at-law, licensed to practice in the State of New York and has a masters degree in public administration.

12. The Debtor has no weekly payroll. No amounts were paid or are proposed to be paid by the Debtor to any officers, stockholders and directors of the Debtor.

13. The Debtor is entitled to receive $65,000.00 per month in rental from American Pastime LLC which rents and operates the Debtor's Facility. Disbursements from this amount include interest due on mortgages, insurance, taxes, and payments to contractors and vendors. Debtor's monthly expenses exceed its monthly rental income. The Debtor has no other income.

DATED: 7/1/98

Francis A. Zarro, Jr.

Sworn to and subscribed before me this 1st day of July, 1998

Notary Public

WILLIAM R. KOHLER
Notary Public, State of New York
No. 40-7328630
Qualified in Putnam County
Commission Expires March 30, 2000

**Troops** find suspected terror center, **3A** | **Vandalism** in New Paltz probed as hate crime, **1B**

Poughkeepsie Journal

FOUNDED IN 1785 NEW YORK STATE'S OLDEST NEWSPAPER

[NO]VEMBER 19, 2004 www.poughkeepsiejournal.com 50 CENTS

# Zarro gets up to 21 years

## Judge shuns leniency plea by swindler

By Larry Fisher-Hertz
Poughkeepsie Journal

A judge Thursday sentenced Francis Zarro Jr. to up to 21 years in prison for bilking investors out of millions of dollars in phony real estate schemes stretching from Dutchess County to Las Vegas.

Zarro, 54, was convicted in July on 13 felony counts of grand larceny and fraud following a three-month trial before Judge James T. Rooney.

As he imposed the sentence Thursday afternoon in the Dutchess County Courthouse, Rooney rejected Zarro's claims the schemes had been nothing more than business deals gone bad.

"This was not business as usual," the judge told Zarro during the 90-minute proceeding. "You are a swindler and a con artist masquerading as a businessman.

"You played with Monopoly money and worthless documents to lure participants with real money, often their life savings," Rooney said.

During the trial, more than 50 witnesses testified Zarro used lies and deceit to convince them to invest in various deals, including the purported purchases of hotels, casinos, office buildings and the Washington Redskins football team.

> 'You are a swindler and a con artist masquerading as a businessman.'
>
> **Judge James T. Rooney**
> Sentencing Francis Zarro Jr.

Zarro, a former Stanfordville resident, was convicted July 8 of 13 felony counts accusing him of stealing an estimated $10 million.

Rooney sentenced Zarro to seven to 21 years in prison on the most serious crime of which he was convicted, the theft of an estimated $2.3 million from Peekskill attorney William Florence. Zarro received sentences of five to 15 years in prison on each of nine other crimes, 2⅓ to seven years on two other thefts and

Please see **Zarro**, 2A



Poughkeepsie Journal file

Francis Zarro Jr. was convicted in July of grand larceny and fraud.

## Presidents salute a legacy



## Coan quits economic growth post

Agency to lose

[Left edge fragments:] ...bench set ...e season ...on ...ted ...they ...tonight ...mell in the ...ist Classic. 1, 6-7F ...oter ...ty in ...ng ...al granted ...est charge ...her-Hertz ...ournal

B-14

9/26/2006 6:06 PM FROM: Fax TO: 01256 479425 PAGE: 046 OF 062

FRIDAY, NOVEMBER 19, 2004 POUGHKEEPSIE JOURNAL

# Zarro: Concurrent sentences make parole possible in 2012

Continued from 1A

1⅓ to four years on a charge of scheming to defraud 10 or more victims.

The sentences will run concurrently, meaning Zarro will become eligible for parole in November 2012.

Zarro's attorney, David Steinberg, has said he plans to appeal the convictions.

Zarro, who has been in the county jail since his conviction, asked Rooney for mercy "for myself and my family." He said he felt sorry for some of his victims who had lost money in his real estate deals and felt obligated to pay them back someday. But he said he never intended to deceive anyone.

"For all my flaws and foolish dreams and silly vanities, I wanted to pay everyone," he said in a letter he read to the judge.

"I will continue to fight for my innocence," he said.

As he finished reading his letter, Zarro turned to face Florence, who was seated in the front row of the gallery of the courtroom.

"I'm heartbroken and very sorry," he said. "It was terrible to watch you on the stand. I'm sorry, Bill."

Assistant state Attorney General Ronda Lustman, one of the prosecutors in the case, asked Rooney to impose the seven-to-21-year sentence, saying Zarro deserved a substantial prison term.

"Mr. Zarro claims there's a fine line between a business deal gone bad and a criminal transaction," Lustman said.

"This defendant went way over that line,' the prosecutor said. "He lied to people and he stole millions of dollars in a deliberate course of conduct that was ongoing for eight years."

Lustman noted that in a memo to the court, Zarro's attorneys contended Zarro was suffering from post-traumatic shock syndrome.

> 'For all my flaws and foolish dreams and silly vanities, I wanted to pay everyone.'
>
> **Francis Zarro Jr.**
> *speaking at his sentencing*

> 'The victims in this case are suffering from post-Frank Zarro shock syndrome.'
>
> **Ronda Lustman**
> referring to a claim by Zarro's attorneys that he suffered from post-traumatic shock syndrome

"The victims in this case are suffering from post-Frank Zarro shock syndrome," she said.

She also noted a pre-sentence report on Zarro's background indicated Zarro grew up with a father who had a serious gambling problem.

"Apparently, this defendant learned to aim a little higher and gamble with other people's money," Lustman said.

**Extensive testimony**

During the trial, Florence testified for more than three weeks about a series of deals Zarro convinced him to invest in, including purported schemes to buy the Desert Inn, Westward Ho and El Rancho casinos in Las Vegas. None of those deals was ever consummated, and Florence never got his money back.

Zarro also was convicted of bilking New York City real estate broker Dominick D'Alleva in a scheme to buy two office buildings in New York City, one of which was owned by hip-hop impresario Sean "P. Diddy" Combs, and another deal to buy property in Lake George.

He also was convicted of stealing more than $400,000 from a Dutchess branch of First Union Bank. Bank officials testified Zarro deposited a worthless check in a First Union account in 1999, then withdrew the money before the original check bounced.

**Repeated scheme**

Rooney also found Zarro guilty of a felony count of scheming to defraud. Prosecutors contended Zarro engaged in an ongoing course of conduct, employing a common plan to bilk multiple investors out of their money.

Zarro was acquitted of charges of stealing more than $9 million from former Amenia golf course owner John Segalla, who sold his property to Zarro in 1998.

Prosecutors contended Zarro used lies and deceit when he reneged on an original deal to pay Segalla $14.25 million in cash for the golf course, then known as Segalla Country Club. Zarro later changed the deal, paying Segalla $5 million and signing a promissory note for the balance. He never paid Segalla the remaining $9.25 million.

Zarro later lost the golf course, which he called Island Green, in a bankruptcy proceeding. It is now under new ownership and is called Silo Ridge.

The judge also found Zarro not guilty of two felony counts stemming from a disastrous series of summer concerts by the Hudson Valley Philharmonic orchestra he offered to sponsor at the golf course. Zarro had been accused of grand larceny and possession of stolen property for allegedly reneging on a promise to fund the concerts. The orchestra subsequently went bankrupt.

*Larry Fisher-Hertz can be reached at lhertz@poughkeepsiejournal.com*

---

...nis/Poughkeepsie Journal file

...Grange town court fol-...ate Police investigator

...cided not to do so because ...not asked for explanations ...erdicts in criminal trials.

...udge said most cases ...in the criminal courts ...an intent to commit a ...this case, he said, the issue ...ther the defendant was ...; "and such cases are ...e most difficult."

*...Fisher-Hertz can be ...at lhertz@poughkeep...l.com*

---

# ...ly no! Britain bans hound-based fox hunts

## Sport's proponents promise court battle

The Associated Press

LONDON — Britain outlawed fox hunting in England and Wales on Thursday as elected legislators won a dramatic standoff with the ...

Agnew, chairman of the Surrey Union Hunt.

Prime Minister Tony Blair, who had vainly promoted a compromise to regulate hunting, ...

R O S S & M A T Z A
Attorneys at Law
29 John Street * suite 1604 * New York, NY 10038
(212) 619-4180 * Fax (212) 587-3326

June 1, 1995

Agnes Carvel
265 North Country Club Drive
Atlantis, FL 33462

BILL: PAYABLE ON RECEIPT
File no. 92-1131

STATEMENT OF PROFESSIONAL LEGAL SERVICES RENDERED:

RE: AGNES CARVEL:
THE AGNES CARVEL 1991 TRUST
THE THOMAS AND AGNES CARVEL FOUNDATION
THOMAS CARVEL CHARITABLE REMAINDER UNITRUST
RELATED PERSONAL MATTERS

→ 5/ 1/95: Telephone conferences with P.Carvel; B.Wexler; C.Dome (Andreas Holdings); draft secretary's certification:
2.25H

→ 5/ 2/95: Attend meeting noticed as "Andreas Holdings Corporation shareholder meeting"; telephone conference with P. Carvel:
3.0 H

5/ 8/95: Telephone conference with P.Carvel and Mrs. A.Carvel; review P.Carvel reply affidavit and police reports; telephone conference with A.Ferrer (S.Skouros); review proposed guardian ad litem order:
2.75H

5/11/95: Telephone conference with J.Lang; draft memo to file; review B.Godley memo; conference with J.Matza; review P.Carvel memo(AMI); telephone conference with P.Carvel:
2.75H

5/12/95: Court appearance Sup.West(Carvel v. Godley) telephone conference with P.Carvel; review H.Gavaris affidavit; telephone conference with S.Skouros:
4.5 H

→ 5/15/95: Draft memo to file on 5/2/95 AHC "shareholder" meeting:
1.5 H



JUN-02-1995 17:01 FROM ROSS & MATZA ESQS TO PAMELA CARVEL P.02

| | | |
|---|---|---|
| 5/16/95: | Review P.Carvel memos: | 1.5 H |
| 5/17/95 | Telephone conference with P.Carvel; draft memo to file; review proposed escrow stipulation; review amended complaint ["Foundation" v. Agnes Carvel"]: | 2.5 H |
| 5/18/95: | Draft answer to amended complaint: | 3.0 H |
| 5/19/95: | Draft answer to amended complaint: | 4.0 H |
| 5/22/95: | Telephone conference with P.Carvel; correspondence to L&L; review P.Carvel memo: | 2.5 H |
| 5/23/95: | Telephone conference with H.Gavaria: | .75H |
| 5/24/95: | Telephone conference with P.Carvel; review documents annexed to amended complaint: | 3.0 H |
| 5/25/95: | Telephone conference with P.Carvel; review proposed broker's agreement; correlate material to send to Kramer & Love: | 1.5 H |
| 5/30/95: | Review & research Foundation member rights: | 1.0 H |
| 5/31/95: | Telephone conferences with P.Carvel; H.Gavaria; R.Koonan and P.Osborne; review and research foundation member rights: | 1.5 H |

**TOTAL HOURS:** 36.00H

36.00H at $250 per hour: $ 9,000.00

Disbursements:

| | |
|---|---|
| Photocopy: | 793.76 |
| Trainfare: | 11.50 |
| Taxi fare: | 10.00 |
| Messenger: | 15.00 |

**TOTAL BALANCE DUE:** $ 9,830.26

**ROSS & MATZA**
**Attorneys at Law**
**29 John Street * Suite 1004 * New York, NY 10038**
**(212) 619-4180 * Fax (212) 587-3326**

November 1, 1995

Agnes Carvel
265 North Country Club Drive
Atlantis, FL 33462

BILL: PAYABLE ON RECEIPT
File no. 92-1131

**STATEMENT OF PROFESSIONAL LEGAL SERVICES RENDERED:**

**RE: AGNES CARVEL:**
**THE AGNES CARVEL 1991 TRUST**
**THE THOMAS AND AGNES CARVEL FOUNDATION**
**THOMAS CARVEL CHARITABLE REMAINDER UNITRUST**
**RELATED PERSONAL MATTERS**

9/ 1/95: Telephone conference with H. Gavaris:
.25H

9/ 4/95: Correspondence to P.Carvel; review 1991 Trust trustees commissions; telephone conference with I.Cump [Greenpoint Bank]; draft memo; prepare summary of FDN legal fees:
4.25H

9/ 6/95: Draft correspondence to Gov.Byrne and IRS; review H.Gavaris memo of fees and commissions; revise memo to H.Gavaris on unitrust:
3.5 H

9/ 7/95: Telephone conference with H.Gavaris; revise letters to IRS and Gov.Byrne:
2.75H

9/ 8/95: Telephone conferences with R.Schwartz; H.Gavaris and P.Carvel; review 1991 Trust complaint [Florida]; telephone conference with M.Rosenthal:
2.25H

9/11/95: Telephone conferences with H.Gavaris and R.Valihira; review H.Gavaris material to S.Boynton, GAL; review Andreas file for material to send to R.Valihira:
2.5 H

9/14/95: Telephone conference with IRS and correspondence to IRS:
.5 H



SEP-15-1997 11:01 FROM ROSS & MATZA ESQS TO PAMELA CARVEL P.04

9/15/95: Telephone conference with R.Valihira: .25H

9/18/95: Telephone conference with H.Gavaris; review Godley etc. petition to review A.Carvel and P.Carvel letters; review H.Gavaris motion to compel production of IRS 30 day letter: 2.5 H

9/20/95: Review Estate minutes; telephone conference with H.Gavaris; review discovery order: 2.0 H

9/22/95: Review Estate minutes regarding Andreas and Chain and Estate money transfers: 2.5 H

9/27/95: Court appearance: Surrogate Westchester: 8.0 H

9/28/95: Telephone conferences with P.Carvel [London]; M.Rosenthal; R.Valihira: 2.5 H

9/29/95: Review Andreas records: 1.0 H

10/ 3/95: Telephone conferences with A.Vasile and H.Gavaris: 1.0 H

10/ 5/95: Telephone conferences with A.Vasile and H.Gavaris; review records per A.Vasile request: 1.5 H

10/ 6/95: Correspondence: 1.0 H

10/ 9/95: Telephone conference with H.Gavaris: .5 H

10/10/95: Correspondence to A.Vasile and H.Gavaris; review answer to petition to revoke AC and PC letters; telephone conference with R.Schwartz: 2.75H

10/11/95: Review 1991 Trust; telephone conference with A.Vasile; draft memo: 2.0 H

10/12/95: Review 1991 Trust accountings [1993 & 1994]; telephone conferences with A.Vasile and R.Schwartz: 2.25H

10/13/95: Review 1991 Trust accounting [1994]; prepare 1991-1994 trust summary and draft questions: 6.0 H

10/15/95: Review 1991 Trust 1994 accounting and review and revise questions: 1.0 H



B-19

SEP-15-1997 11:02 FROM ROSS & MATZA ESQS TO PAMELA CARVEL P.05

10/16/95: Review 1991 Trust accountings [1991-1994] revise summary; review 1993 accountings; develop issues:

5.0 H

10/17/95: Telephone conference with M.Rosenthal; review 1993 and 1994 accountings:

4.5 H

10/18/95: Telephone conferences with P.Carvel; M.Rosenthal; J.Lang and Kitty H.; correspondence to E.Kaviar:

2.25H

10/20/95: Review Loeb & Loeb discovery requests; correspondence to Chase and Bankers Trust; review Arcadipane summons and notice to R.Davis [filed NYCty 2/28/95]:

3.5 H

10/24/95: Draft memo on Arcadipane summons; telephone conference with P.Carvel; correspondence to Bankers Trust:

1.75H

10/25/95: Telephone conferences with R.Schwartz and J.George [Florida counsel]; conference with J.Lang:

4.0 H

10/26/95: Review memo of law: Agnes Carvel adv. Carvel Foundation [in opposition to motion to dismiss counterclaims]; telephone conference with H.Gavaris and R.Schwartz; correspondence to Chicago Title:

4.5 H

10/27/95: Review P.Carvel memos; telephone conferences with L.Dedalto and J.Weiner at Bankers Trust and K.Frederick at Skadden Arps for Bankers Trust:

2.0 H

10/30/95: Telephone conferences with K.Frederick and S.Boynton; draft GAL review policy and correspondence to P.Carvel:

1.75H

10/31/95: Review K.Frederick letter to S.Boynton and S.Boynton response letter to K.Frederick; telephone conferences with S.Boynton; K.Frederick; L.Dedalto and P.Carvel; correspondence to K.Frederick; memo to P.Carvel:

2.5 H

TOTAL HOURS: 84.50H

84.50H at $250 per hour: $21,125.00



SEP-15-1997 11:03 FROM ROSS & MATZA ESQS TO PAMELA CARVEL P.06

| | | |
|---|---|---|
| Disbursements: | | |
| | Photocopy: | 91.76 |
| | telephone charges: | 147.34 |
| | postage: | 7.80 |
| TOTAL: | | $21,371.90 |
| | Credit Sept. 1, 1995 bill: $10,469.66 | |
| **TOTAL BALANCE DUE:** | | **$10,902.24** |



SEP-15-1997 11:03 FROM ROSS & MATZA ESQS TO PAMELA CARVEL P.07

R O S S & M A T Z A
Attorneys at Law
29 John Street * suite 1004 * New York, NY 10038
(212) 619-4180 * Fax (212) 587-3326

January 26, 1999

Estate of Agnes Carvel
268 Russell Court
3 Woburn Place
London, UK

**BILL : PAYABLE ON RECEIPT [Replaces 12/15/98 Bill]**

**STATEMENT OF PROFESSIONAL LEGAL SERVICES RENDERED**

**RE: ESTATE OF THOMAS CARVEL
AGNES CARVEL 1991 TRUST
THOMAS CARVEL CHARITABLE REMAINDER UNITRUST
THOMAS AND AGNES CARVEL FOUNDATION
ESTATE OF AGNES CARVEL**

| Date | Description | Hours |
|---|---|---|
| 7/ 1/98: | Conference with Agnes Carvel and Pamela Carvel in London: | .75H |
| 7/ 2/98: | Conference with Agnes Carvel and Pamela Carvel in London: | 1.0 H |
| 7/ 3/98: | Conference with Agnes Carvel and Pamela Carvel in London: | 1.5 H |
| 7/ 5/98: | Telephone conference with Boston-based magazine/newspaper reporter: | .5 H |
| 7/10/98: | Telephone conference with H.Camerik, H.Gavaris, M.Smith and P.Carvel: | 2.75H |
| 7/15/98: | Draft L.Ross affidavit for J.Lang motion: | 3.0 H |
| 7/23/98: | Review Loeb & Loeb memo of law on motion to remand and discuss same with R.Schneider: | 1.0 H |
| 7/30/98: | Review documents for H.Camerik for 1991 Trust litigation: | 2.0 H |
| 8/11/98: | Telephone conference with C.Lintott and P.Carvel; review A.Carvel Will and file and telephone conference with B.Golding of Gannett: | 1.75H |

8/12/98: Review Oxman's final report:

1.0 H

8/25/98: Draft memo to P.Carvel and telephone conference with M.Smith and R.Offenkrantz:

1.5 H

8/28/98: Telephone conference with E.Kaviar re: Kaviar mortgage and memo to P.Carvel:

1.25H

9/ 1/98: Telephone conference with P.Carvel and J.Spitzer:

1.0 H

9/ 2/98: Telephone conference with H.Camerik and P.Carvel:

1.0 H

9/ 3/98: Correspondence to J.Spitzer:

.5 H

9/ 4/98: Telephone conference with P.Carvel:

.5 H

9/ 8/98: Review Loeb & Loeb response to Oxman's report and discuss with H.Gavaris:

1.25H

9/ 9/98: Telephone conference with P.Carvel:

.25H

9/13/98: Correspondence:

.25H

9/18/98: Telephone conference with P.Carvel:

.75H

9/23/98: Telephone conference with P.Carvel:

1.25H

9/30/98: Review Zarro/New Deal Properties bankruptcy:

2.0 H

10/ 2/98: Review OSC to appoint public adminstrator over Estate of Agnes Carvel:

1.5 H

10/ 9/98: Review documents, correspondence and telephone conference:

1.25H

10/19/98: Review memos and correspondence:

.75H

10/23/98: Review P.Carvel memos and correspondence:

2.0 H

11/ 2/98: Telephone conference with M.Smith regarding OSC to appoint PA over E/O Agnes Carvel:

.5 H

| | | |
|---|---|---|
| 11/ 3/98: | Correspondence to P.Carvel and review H.Camerik correspondence and P.Carvel memos: | 2.0 H |
| 11/ 6/98: | Review P.Carvel memos and M.Smith affidavit: | 1.5 H |
| 11/10/98: | Review case law received from P. Carvel: | 2.25H |
| 12/ 8/98: | Prepare summary analysis of Carvel Corp. stock information as of 8/20/93: | 1.0 H |
| 12/10/98: | Review P.Carvel analysis of Carvel Corp. stock, including information current to 12/10/98: | 1.0 H |
| 12/14/98: | Review D.Jewell affidavit and memo of law in support of remand from federal court to Surrogates Court and review P.Carvel affidavit in opposition | 2.5 H |
| 12/18/98: | Review P.Carvel memo and H.Camerik correspondence and order; telephone conference with P.Carvel and H.Camerik: | 1.5 H |
| 12/21/98: | Telephone conference with M.Smith: | .25H |
| 1/ 4/99: | Telephone conference with P.Carvel: | 1.0 H |
| 1/ 5/99: | Review ancillary probate: | 1.0 H |
| 1/ 6/99: | Review P.Carvel memos and EPTL 13-3.5: | 1.0 H |
| 1/12/99: | Telephone conference with M.Smith: | .5 H |
| 1/13/99: | Telephone conference with P.Carvel; review memos: | 1.5 H |
| 1/14/99: | Review H.Camerik correspondence and memo and CLOA records and P.Carvel records: | 1.0 H |
| 1/15/99: | Telephone conference with M.Smith: | .25H |

| | | |
|---|---|---|
| 1/18/99: | Review CLOA records and send tosM.Smith; review P.Carvel memo: | 1.5 H |
| 1/21/99: | Review P.Carvel affidavit: | .5 H |
| 1/22/99: | Telephone conference with P.Carvel: | .25H |
| 1/25/99: | Review P.Carvel memos: | .5 H |
| 1/26/99: | Telephone conference with P.Carvel: | .25H |

TOTAL HOURS: 53.75H

43 hours at $250 per hour: $13,437.50

Disbursements:

| | |
|---|---|
| Express mailings: | 30 |
| fax cartridges: | 225 |
| photocopy: | 65 |
| messenger: | 15 |
| telephone charges: | 107 |

Less credit on account: $4,625

**TOTAL BALANCE DUE:** $9,254.50

# FedEx Express International Air Waybill

**Customs Copy**

8608 5612 2293 — PACKAGE LABEL / COMMERCIAL INVOICE LABEL / DELIVERY RECORD LABEL / DELIVERY REATTEMPT LABEL

**1 From**

Date: 12 07 07 Sender's FedEx Account Number: 2146-4983-5

Sender's Name: CARUEL Phone: 00442078 1726

Company: MAIL BOX'S ETC

Address:

Address: 456-458 STRAND

City: LONDON State/Province:

Country: GB Postal Code: WC2R

Sender's VAT/TURN Number — REQUIRED for IntraEuropean shipments.

**2 To**

Recipient's Name: CLERK Phone: 1 302 5736170

Company: DISTRICT COURT DELAWARE

Address: 844 N. KING ST Dept./Floor: CLERK

Address: FEDERAL BLDG

City: WILMINGTON State/Province: DE

Country: USA ZIP/Postal Code: 19801

Recipient's Tax ID Number for Customs Purposes — e.g. GST/RFC/VAT/IN/EIN/ABN, or as locally required.

**3 Shipment Information**

☐ For EU Only: Tick here if goods are not in free circulation and provide C.I.

Total Packages: 1 Total Weight: 0.5 ☐ lbs ☑ kg DIM L (G.W) H ☐ in. ☐ cm

| Commodity Description DETAIL REQUIRED | Harmonised Code | Country of Manufacture | Value for Customs REQUIRED |
|---|---|---|---|
| BUSINESS DOCUMENTS | | | NCV |
| | | UK | |
| Total Declared Value for Carriage (Specify Currency) | | Total Value for Customs (Specify Currency) | NCV |

**4 Express Package Service** — Packages up to 150 lbs. / 68 kg. For packages over 150 lbs. (68 kg), use the FedEx Expanded Service Intl. Air Waybill.

1 ☒ FedEx Intl. Priority 6 ☐ FedEx Intl. First (Available to select locations. Higher rates apply.)

☐ 3 ☐ FedEx Intl. Economy (FedEx Envelope and FedEx Pak rate not available.) 57 ☐ NEW FedEx Europe First option for FedEx Intl. Priority (Next-day early-morning delivery between select European locations, extra fee applies.)

Not all services and options are available to all destinations. Dangerous goods cannot be shipped using this Air Waybill.

**5 Packaging** — *For FedEx Intl. Priority and FedEx Europe First only.

6 ☒ FedEx Envelope 2 ☐ FedEx Pak 3 ☐ FedEx Box 4 ☐ FedEx Tube

1 ☐ Other PW ☐ FedEx 10kg Box* PX ☐ FedEx 25kg Box*

**6 Special Handling**

1 ☐ HOLD at FedEx Location (Available for FedEx Intl. Priority and FedEx Intl. Economy only.) 3 ☐ SATURDAY Delivery (Available to select locations for FedEx Intl. Priority only.)

**7a Payment** *Bill transportation charges to:* — Enter FedEx Acct. No. or Credit Card No. below.

1 ☒ Sender (Acct. No. in Section 1 will be billed.) 2 ☐ Recipient 3 ☐ Third Party 4 ☐ Credit Card 5 ☐ Cash Cheque

FedEx Acct. No. — Credit Card Exp. Date — Total Transportation — Specify Currency

**7b Payment** *Bill duties and taxes to:* — All shipments may be subject to Customs charges, which FedEx does not estimate prior to clearance. Enter FedEx Acct. No. below.

1 ☐ Sender (Acct. No. in Section 1 will be billed.) 2 ☒ Recipient 3 ☐ Third Party 5 ☐ Cash Cheque

FedEx Acct. No.

**8 Your Internal Billing Reference:** 17831 — First 24 characters will appear on invoice.

**9 Required Signature**

Use of this Air Waybill constitutes your agreement to the FedEx Conditions of Carriage for EMEA, an extract of which is reproduced on the back of this Air Waybill, and you represent that this shipment does not contain dangerous goods. Certain international treaties, including the Warsaw Convention, may apply to this shipment and limit our liability for damage, loss, or delay, as described in our Conditions of Carriage for EMEA.

Sender's Signature: [signature]

*This is not authorisation to deliver this shipment without a recipient signature.*

Received above shipment in good order and condition. We agree to pay all charges, including Customs duties and taxes as applicable, and we agree to the Conditions of Carriage as stated on the reverse side of the Recipient's Copy.

Recipient's Signature:

FedEx Tracking Number: 8608 5612 2293 0460

532

PART 158405 EMEA Rev. Date 4/06 ©1994–2006 FedEx PRINTED IN U.S.A.

Form ID No.

| Origin Station ID | Destination Station ID | URSA Routing | Handling Units |
|---|---|---|---|
| LCYA | XB | 2WIA | Total Volume (cm) |

Received At: 1 ☒ Reg. Stop 2 ☒ On-Call Stop 3 ☐ Drop Box 4 ☐ World Service Center 5 ☐ Station — Forms Attached: ☐ CI ☐ CO

Base Charges — Declared Val. Chrg. — Other — ODA/OPA — Credit Card Auth.

FedEx Emp. # [illegible] — Audit Emp. # — Date — Time — Del. Courier Emp. # — Date — Time

Non-Negotiable International Air Waybill • ©1994–2006 FedEx